2010 WY 122

**SINCLAIR OIL CORPORATION,**
Appellant (Petitioner),

v.

**WYOMING DEPARTMENT OF REVENUE, Appellee**
(Respondent).

No. S–09–0231.

Supreme Court of Wyoming.

Aug. 26, 2010.

used to construct foundations for these machines also qualify for the tax exemption. Sinclair applied to the Wyoming Department of Revenue for a refund of the sales tax it had paid on the foundation materials. The Department denied that application. Sinclair appealed to the Wyoming State Board of Equalization, and the Board upheld the Department's determination. Sinclair then appealed to the district court, which certified the case for direct review by this Court. We will affirm the Board's decision.

## ISSUES

[¶ 2]   Sinclair presents two issues:

1.  Because the parties have stipulated that the Hydrocracker and Number Two Reformer at Sinclair's Wyoming refineries are "machinery" entitled to the manufacturing exemption found in Wyo. Stat. Ann. § 39–15–105(a)(viii)(O), are the concrete related materials also considered exempt machinery because they were purchased by Sinclair and subsequently incorporated into the foundation[s] of the exempt machinery?

2.  Assuming *arguendo* that the concrete related materials were not tangible personal property at the moment of "sale" as defined in Wyo. Stat. Ann. § 39–15–101(a)(vii), but instead were "real property" as defined in Wyo. Stat. Ann. § 39–15–101(a)(v), should Sinclair be entitled to a refund because real property is not subject to excise tax?

The Department synthesizes the dispute into a single issue:

Did the State Board of Equalization correctly conclude that the manufacturing machinery tax exemption established pursuant to Wyo. Stat. Ann. § 39–15–105(a)(viii)(O) does not apply to materials purchased and used to construct embedded concrete foundations for machinery used to manufacture?

## FACTS

[¶ 3]   In 2005,[1] Sinclair installed a new hydrocracker at its petroleum refinery in

Representing Appellant: John A. Sundahl, Sundahl, Powers, Kapp & Martin, LLC, Cheyenne, Wyoming.

Representing Appellee: Bruce A. Salzburg, Attorney General; Michael L. Hubbard, Deputy Attorney General; Karl D. Anderson, Senior Assistant Attorney General; Martin L. Hardsocg, Senior Assistant Attorney General. Argument by Mr. Anderson.

Before KITE, C.J., and GOLDEN, HILL, VOIGT *, and BURKE, JJ.

BURKE, Justice.

[¶ 1]   Effective July 1, 2004, the Wyoming Legislature provided a sales tax exemption for machinery used in manufacturing in Wyoming. It is undisputed that this tax exemption applies to two large pieces of machinery owned by Sinclair Oil Corporation. Sinclair further claims, however, that the materials

* *Chief Justice at time of oral argument.*

1.  The exact installation date for the hydrocracker is difficult to discern from the record. The same

Sinclair, Wyoming. The hydrocracker is a large piece of equipment that "cracks" crude oil components into different saleable products such as diesel fuel, gasoline, and heavier products. The hydrocracker was designed to be installed on a large foundation. To construct the foundation, Sinclair purchased concrete, rebar, grout, and related components and materials. Sinclair paid a total of $19,118.05 in sales or excise tax when it purchased these materials. Sinclair excavated the site, drilled holes down to and into the bedrock, and placed fabricated concrete piers into the holes. A concrete cap and pedestal were poured on top. The hydrocracker was attached to the foundation with anchor bolts.

[¶ 4] In 2006, Sinclair installed a reformer at its refinery in Casper, Wyoming. A reformer is used to process long petroleum molecules into shorter molecules with higher octane levels. Like the hydrocracker, the reformer was designed to be installed on a large concrete foundation. Sinclair purchased the concrete, rebar, grout, and related materials to construct the foundation, and paid a total of $6,388.68 in sales or excise tax on these materials. This foundation was of a somewhat different design than the one for the hydrocracker, but the construction process was similar. After the foundation was completed, the reformer was bolted into place.

[¶ 5] The Department conducted tax audits of Sinclair in 2006. Sinclair and the Department were in agreement that the hydrocracker and reformer qualified for the sales tax exemption. During the audit process, however, Sinclair also claimed that the tax exemption applied to the materials it had purchased to construct the foundations for the hydrocracker and reformer. The Department disagreed. Sinclair appealed to the Board, which held an evidentiary hearing on September 9 and 10, 2008. The Board issued its decision on June 30, 2009, affirming the Department's determination. Sinclair appealed the Board's decision.

### STANDARD OF REVIEW

[¶ 6] We review an administrative agency's decision following the provisions of the Wyoming Administrative Procedure Act, which provides, in pertinent part, that the reviewing court shall:

(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;

(B) Contrary to constitutional right, power, privilege or immunity;

(C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;

(D) Without observance of procedure required by law; or

(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

Wyo. Stat. Ann. § 16-3-114(c) (LexisNexis 2009). We affirm an agency's findings of fact if they are supported by substantial evidence. *Dale v. S & S Builders, LLC*, 2008 WY 84, ¶ 22, 188 P.3d 554, 561 (Wyo.2008). In this case, however, there is no real dispute over the facts. Rather, Sinclair claims that the Board incorrectly applied the law to those facts, so that the Board's legal conclusions are not in accordance with the law. "As always, we review an agency's conclusions of law *de novo*." *Id.*, ¶ 26, 188 P.3d at 561.

[¶ 7] The basic task before us is to interpret the statute establishing the tax exemption, Wyo. Stat. Ann. § 39-15-105(a)(viii), along with related provisions, to determine whether the Board correctly applied the statute to the largely undisputed facts. Statutory interpretation presents a question of law which we review *de novo*. *Qwest Corp. v. State*, 2006 WY 35, ¶ 8, 130 P.3d 507, 511 (Wyo.2006).

When interpreting statutes, we follow an established set of guidelines. First, we determine if the statute is ambiguous or unambiguous. A statute is unambiguous if its wording is such that reasonable persons

---

is true for the reformer discussed in the next paragraph. It is undisputed, however, that both machines were installed within the period covered by the tax exemption.

are able to agree as to its meaning with consistency and predictability. Unless another meaning is clearly intended, words and phrases shall be taken in their ordinary and usual sense. Conversely, a statute is ambiguous only if it is found to be vague or uncertain and subject to varying interpretations.

*BP America Production Co. v. Department of Revenue,* 2006 WY 27, ¶ 20, 130 P.3d 438, 464 (Wyo.2006). If a statute is clear and unambiguous, we give effect to the plain language of the statute. *Wyoming Dep't of Transportation v. Haglund,* 982 P.2d 699, 701 (Wyo.1999); *State ex rel. Wyo. Dep't of Revenue v. Union Pacific R.R. Co.,* 2003 WY 54, ¶ 12, 67 P.3d 1176, 1182 (Wyo.2003). Only if a statute is ambiguous will we resort to principles of statutory construction to determine the intent of the legislature. *Qwest,* ¶ 8, 130 P.3d at 511.

### DISCUSSION

[¶ 8] Wyo. Stat. Ann. § 39–15–105(a)(viii) provides the sales tax exemption at issue here:

> (viii) For the purpose of exempting sales of services and tangible personal property as an economic incentive, the following are exempt: ...
>
> (O) Until December 31, 2010, the sale or lease of machinery to be used in this state directly and predominantly in manufacturing tangible personal property, if the sale or lease:
>
> (I) Is to a manufacturer classified by the department under the NAICS code manufacturing sector 31–33;
>
> (II) Does not include noncapitalized machinery except machinery expensed in accordance with section 179 of the Internal Revenue Code; and
>
> (III) Is completed in the case of a sale, or executed in the case of a lease, on or after July 1, 2004.

Sinclair and the Department agree, and stipulated to the Board, that both the reformer at the Casper refinery and the hydrocracker at the refinery in Sinclair meet all of these statutory conditions, and qualify for the tax exemption.

[¶ 9] Using the applicable statutory definitions, Sinclair further argued to the Board that the concrete and related materials used to construct the foundations are also "machinery," and therefore also qualify for the tax exemption. The definition of "machinery," found in Wyo. Stat. Ann. § 39–15–101(a)(xx), includes:

> all tangible personal property ... used to produce an article of tangible personal property. The term includes both the basic unit and any adjunct or attachment necessary for the basic unit to accomplish its intended function, the materials for the construction or repair of the machinery, and machine tools.

According to Sinclair, the reformer and hydrocracker are the basic units, but without foundations, neither piece of machinery could be operated safely and properly. The foundations, Sinclair maintains, fit the definition of an "adjunct or attachment necessary for the basic unit to accomplish its intended function." Sinclair therefore contends that the foundations are included within the statutory definition of "machinery," and the materials used to construct the foundations are eligible for the tax exemption.

[¶ 10] The Department did not dispute Sinclair's contention that the foundations could be considered attachments or adjuncts, and one Department witness agreed that the foundations were necessary for the machines to accomplish their intended functions. The Department maintained, however, that whether or not the foundations were attachments or adjuncts to the basic units, the foundations could not be considered "machinery" because they did not satisfy the initial phrase of the definition: "all tangible personal property." The Department asserted that the foundations were real property to which the tax exemption did not apply.

[¶ 11] The Board was persuaded by the Department's position. It acknowledged that the foundations might be considered adjuncts or attachments, and said there was "no question the foundations constructed at the Casper and Sinclair refineries were necessary for the ... reformer and the hydrocracker to safely and properly function." Nevertheless, the Board observed, the "first

sentence of the statutory definition of 'machinery' establishes a threshold requirement to qualify for the sales tax exemption granted by Wyo. Stat. Ann. § 39–15–105(a)(viii)(O). The 'machinery' must be 'tangible personal property.' " (Some internal citations omitted.) In its conclusions of law, the Board discussed whether Sinclair's foundations were tangible personal property or real property:

> The Board recently discussed in detail the factors to be considered in determining whether property is real or personal in the context of the Wyoming sales and use tax statutes. *In the Matter of the Appeal of Hanover Compression LP,* State Board Docket No. 2006–122, August 24, 2007, 2007 WL 2462039 (Wyo.St.Bd.Eq.); *aff'd State ex rel. Wyoming Dept. of Revenue v. Hanover Compression, LP,* 2008 WY 138, 196 P.3d 781 (Wyo.2008). From the detailed analysis set out in *Hanover,* it is clear that the foundations for the ... reformer and the hydrocracker are real property for sales and use tax purposes. *Hanover Compression, see id.* at ¶¶ 69–124. Of particular relevance to this matter, the Board observed "[t]he concrete foundation is clearly 'embedded' as that term is used in Wyo. Stat. Ann. § 39–15–101(a)(v)(A)." *Hanover Compression, see id.* at ¶ 92. The same conclusion must be reached for the foundations constructed by Sinclair.

The Board further concluded that the statute unambiguously provided that only tangible personal property is eligible for the tax credit, and ruled that the foundations, as real property, did not qualify.

■ [¶ 12] We agree with the Board's conclusions. The statutes plainly provide that the tax exemption applies only to manufacturing machinery, and unambiguously define the term "machinery" to include only tangible personal property. The Board also correctly concluded that the foundations are real property, not tangible personal property. In the case relied upon by the Board, *Hanover Compression,* ¶ 2, 196 P.3d at 783, the question before us was whether the Board had correctly determined that, for sales tax purposes, the natural gas compressor facilities maintained by Hanover were real prop-

erty, as defined in Wyo. Stat. Ann. § 39–15–101(a):

> (v) "Real property" means land and appurtenances, including structures affixed thereto. An article shall be considered real property if:
>
> (A) It is buried or embedded; or
>
> (B) It is physically or constructively annexed to the real property; and
>
> (C) It is adapted to the use of the real property; and
>
> (D) Considering the purpose for which the annexation was made, one can reasonably infer that it was the intent of the annexing party to make the article a permanent part of the real property.

In *Hanover Compression,* the Board had determined that the compressor facilities were real property because they were structures affixed to the land. In order to interpret the statutory definition, we considered the "plain and ordinary meaning of the terms 'structure' and 'affixed,' " by reference to their dictionary definitions. *Id.,* ¶ 12, 196 P.3d at 786. We then compared "the description of the compressor facilities to the plain meaning of the terms 'structure' and 'affixed,' " and said it was "clear that the compressor facilities fit within the statutory definition of real property." *Id.,* ¶ 14, 196 P.3d at 786. We said that "the Board's factual determination that the compressor facilities fit within that statutory definition is supported by substantial evidence." We also concluded that the Board had interpreted the statutory definition "in accord with the law." *Id.,* ¶ 16, 196 P.3d at 787.

[¶ 13] The statutory definition of real property considered in *Hanover Compression* also applies in Sinclair's case. In Sinclair's case, the Board did not determine whether the foundations were "structures" that were "affixed" to the land. Instead, pursuant to the second sentence of the statutory definition, the Board determined that the concrete and related foundation materials were "articles" that had been "buried or embedded." As in *Hanover Compression,* we will first interpret the statutory definition by reference to the plain and ordinary meaning of the terms "buried" and "embedded." One common definition of "bury" is to "place

in the ground." *American Heritage College Dictionary* 195 (4th ed.2004). A common definition of "embed" is to "fix firmly in a surrounding mass." *Id.* at 457.

[¶ 14] We next compare the descriptions of Sinclair's foundations with the plain meanings of the terms "buried" and "embedded." As noted in the Facts section above, it is undisputed that Sinclair excavated the sites, drilled holes to and into the bedrock, and placed concrete piers into the holes. It then poured a concrete cap and pedestal on top. These facts establish that the foundation materials were placed in the ground—buried—and fixed firmly in a surrounding mass—embedded. We conclude that the Board properly interpreted the statutory definition of real property, and that the Board's underlying factual determination that Sinclair's foundations fit within that statutory definition is supported by substantial evidence. On these bases, we perceive no error in the Board's conclusions that the foundations are real property, and that the foundations and foundation materials are ineligible for the tax exemption.

[¶ 15] Sinclair further asserts, as its second issue, that if the foundations are real property, then Sinclair should not have paid sales tax on the foundation materials when it purchased them. Sinclair correctly points out that sales tax applies only to tangible personal property, not to real property. Wyo. Stat. Ann. § 39–15–103(a)(i)(A). Sinclair's argument seems to assume that the nature of property is immutable. That is not the case. Personal property can be converted into real property, as is apparent by the statutory definition of real property quoted above.

[¶ 16] In *Hanover*, ¶ 10, 196 P.3d at 785, we quoted from the Board's interpretation of this statutory definition of real property. The Board found "an important difference" between the first and second sentences of the definition. The first sentence "refers to land and appurtenances, and structures affixed thereto, which over time have unquestionably been viewed as real property. They are neither portable nor easily moved." The second sentence "refers to an 'article.' ... An article is, in common understanding, an item which is portable, which is easily movable such as an article of clothing or an article of luggage." The Board then noted that the statutory definition of real property included not only "traditional land, appurtenances, and structures," but also " 'articles' which, while generally portable and moveable, are to be considered real property if certain requirements are fulfilled." Among the requirements specified in the statute is that the "article" be "buried" or "embedded." In accordance with this statutory language, an article that is personal property can be converted to real property when it is buried or embedded.

[¶ 17] That is what happened in Sinclair's case. The Board correctly concluded that the concrete and related materials were personal property when Sinclair purchased them. In Wyoming, sales or excise tax is levied on the retail price at the time of the sale. Wyo. Stat. Ann. § 39–15–103(a)(i)(A). Consequently, the concrete and related materials were subject to sales tax. Later, Sinclair buried and embedded the foundation materials, thereby converting them into real property. By the time the hydrocracker and reformer were bolted to the foundations, the foundations had become real property. They were therefore ineligible for the tax exemption for manufacturing machinery, Wyo. Stat. Ann. § 39–15–105(a)(viii)(O), because they did not satisfy the definition of machinery, which includes only tangible personal property, Wyo. Stat. Ann. § 39–15–101(a)(xx).

[¶ 18] Both Sinclair and the Department supported their arguments with citations to cases from other jurisdictions. We reviewed these cases, but found none of them persuasive, because none of them dealt with statutory language sufficiently similar to the language of the Wyoming statutes. In particular, none of these cases considered language like the Wyoming definitions of the terms "machinery" and "real property." As the above discussion indicates, the Board carefully interpreted the language of the statutes applicable to Sinclair's situation. We conclude that its interpretations were in accordance with the law, its findings of fact were supported by substantial evidence, and

its conclusions of law were correct. We therefore affirm the Board's decision.

KITE, Chief Justice, dissenting, in which VOIGT, Justice, joins.

[¶ 19] I believe the Board erred by denying Sinclair's request for a refund of sales tax paid on the purchase of materials used to construct foundations for its hydrocracker and reformer. Consequently, I dissent.

[¶ 20] In Wyoming, excise taxes are levied on sales of tangible personal property. Wyo. Stat. Ann. § 39–15–103(a)(i)(A). "Sale" is defined as the transfer of possession of personal property. Wyo. Stat. Ann. § 39–15–101(a)(vii). The legislature decided as an economic incentive to exempt from excise taxation the sale of machinery used predominately in manufacturing tangible personal property. Wyo. Stat. Ann. § 39–15–105(a)(viii)(O ). Section 39–15–101(a)(xx) broadly defines "machinery" as including: "both the basic unit and any adjunct or attachment necessary for the basic unit to accomplish its intended function" and "the materials for the construction or repair of machinery."

[¶ 21] The parties seem to agree that the foundation materials fall within the definition of "machinery" and that, at the time of sale, the disputed items were tangible personal property. Nevertheless, the majority opinion concludes the materials do not qualify for the exemption because they were eventually embedded and thus became real property, as defined in § 39–15–101(a)(v)(A). The majority opinion ignores the fact that the tax (and, consequently, the exemption) is imposed at the time of sale under §§ 39–15–101(a)(vii) and 39–15–103(a)(i)(A), and looks, instead, at the ultimate disposition of the materials. All kinds of personal property can ultimately become part of a structure that meets the definition of real property; however, that does not mean those materials were not personal property at the time of purchase. The statute does not state that the availability of the exemption depends upon the eventual disposition of the materials.

[¶ 22] By creating the requirement that in order to qualify for the exemption machinery can never be incorporated into real property, the Board and the majority opinion have added additional language into the statute. The omission of language by the legislature is considered to be intentional and we will not read language into a statute when the legislature has chosen not to include it. *Morris v. CMS Oil and Gas Co.*, 2010 WY 37, ¶ 28, 227 P.3d 325, 333 (Wyo.2010).

[¶ 23] The legislature adopted § 39–15–105(a)(viii) "as an economic incentive" to encourage manufacturing. The parties all agree that the hydrocracker and reformer qualified for the exemption and the foundations were necessary in order to operate those pieces of machinery. The legislature specifically drafted the exemption broadly so that all components of manufacturing machinery would be exempt, thus encouraging businesses to invest in such machinery. The purpose of the statute is not served by denying the exemption for materials used to complete the foundations necessary for the operation of the manufacturing machinery.

[¶ 24] *Wyoming Dep't of Revenue v. Hanover Compression, LP*, 2008 WY 138, 196 P.3d 781 (Wyo.2008), which was relied upon by the Board and cited by the majority opinion, does not further the analysis of whether excise tax was due on the materials. That case simply addressed whether compressor facilities were real property or personal property and, consequently, whether payments for operation and maintenance of the facilities were subject to sales tax. *Id.,* ¶¶ 3–5, 196 P.3d at 783. It had nothing to do with determining the nature of the materials used to construct the facility. In fact, under the majority's reasoning, *Hanover* would require Sinclair to lose the exemption for the hydrocracker and reformer as well because they became real property when they were permanently affixed to the foundation. Like the compressors deemed to be real property in *Hanover,* ¶¶ 13–14, 196 P.3d at 786, the Board's findings in this case indicate that the hydrocracker and reformer were affixed to the foundations and, therefore, became real property.

[¶ 25] In order to remain true to the legislative intent, the nature of the property should have been determined at the time of

sale. At that time, the materials were tangible personal property and qualified for the exemption under § 39–15–105(a)(viii)(*O* ). I would hold that the Board erred by concluding that Sinclair was not entitled to an exemption from the excise tax for the foundation materials.