# IN THE SUPREME COURT, STATE OF WYOMING

## 2014 WY 129

**OCTOBER TERM, A.D. 2014**

**October 14, 2014**

IN THE MATTER OF THE ESTATE OF:
RONALD KEITH SCHERER, Deceased
LILYANNA B. KNUDSON,

Appellant
(Petitioner),

v.

S-13-0281

ROBERT LEE SCHERER II,

Appellee
(Respondent).

*Appeal from the District Court of Laramie County*
*The Honorable Peter G. Arnold, Judge*

*Representing Appellant:*

>   *John Z. Courson and Matthew D. Kaufman, Hathaway & Kunz, P.C., Cheyenne, Wyoming. Argument by Mr. Courson.*

*Representing Appellee:*

>   *Donald P. Prehoda, Jr. and Aaron L. Tomisich, Prehoda, Leonard & Edwards, LLC, Laramie, Wyoming. Argument by Mr. Tomisich.*

*Before BURKE, C.J., and HILL, KITE\*, DAVIS, and FOX, JJ.*

*\*Chief Justice at time of oral argument.*

NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third.  Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.

**BURKE, Chief Justice.**

[¶1]   Ronald K. Scherer died intestate in 2009.  At that time, Appellant Lilyanna Knudson believed that the decedent was her biological father.  She learned after his death that he was not.  She filed a petition in district court seeking a determination that she was his heir.  She based her claim on the judicially-created doctrine of equitable adoption. Robert L. Scherer, II,[1] brother of the decedent, filed a motion to dismiss Ms. Knudson's petition, claiming that equitable adoption is not recognized in Wyoming law and is contrary to Wyoming's probate statutes.  The district court granted Mr. Scherer's motion to dismiss, and Ms. Knudson filed this appeal.  We will affirm the district court's ruling.

## ISSUES

[¶2]   Ms. Knudson presents three issues in this appeal:

> 1.    Does the theory of equitable adoption apply in Wyoming?
>
> 2.    Do the Determination of Heirship statutes, Wyo. Stat. Ann. § 2-9-201, *et seq.* (LexisNexis 2009), apply only to real property?
>
> 3.    If the Determination of Heirship statutes, Wyo. Stat. Ann. § 2-9-201, *et seq.*, applies only to real property, did the district court err by dismissing Appellant's application instead of limiting the proceedings to the real property at issue?

## FACTS

[¶3]   When we review a district court's grant of a motion to dismiss pursuant to W.R.C.P. 12(b)(6), we accept the facts stated in the complaint or petition as true. *Sinclair v. City of Gillette*, 2012 WY 19, ¶ 8, 270 P.3d 644, 646 (Wyo. 2012).  The facts underlying Ms. Knudson's equitable adoption claim were pleaded clearly and concisely in her petition, and we quote them here:

> 8.    Pursuant to the doctrine of equitable adoption, Petitioner is the daughter and heir of Decedent.

---

[1] In this opinion, we will refer to the Appellee, Robert L. Scherer, II, as "Mr. Scherer," and to Ronald K. Scherer as "the decedent."

9. Decedent was present at Petitioner's birth.

10. For a period after Petitioner's birth, Decedent cohabitated with Petitioner's mother.

11. Upon information and belief, during that period, Decedent believed and held himself to be Petitioner's biological father.

12. When Petitioner was a child, her mother had a paternity test performed, which showed Decedent was not Petitioner's biological father.

13. Petitioner's mother informed Decedent of the test results.

14. Nevertheless, after learning he was not Petitioner's biological father, Decedent considered Petitioner to be, and treated Petitioner as, his daughter, and held himself out as Petitioner's father.

15. From Petitioner's birth until the Decedent's death, Petitioner believed and considered Decedent to be, and treated Decedent as, her father.

16. Decedent contributed financially and emotionally to Petitioner's upbringing.

17. Among other things, Decedent provided Petitioner with the following items throughout his life:

   a. Educational books and magazines;
   b. Jewelry;
   c. Vitamins;
   d. Bicycles;
   e. A collection of dolls;
   f. Clothing; and
   g. A vehicle.

18. Moreover, Decedent signed holiday cards he sent to Petitioner as "Your Dad." Exhibit B.

19.     On numerous occasions over several years, Decedent advised Petitioner's mother that he considered Petitioner as his heir who would inherit his estate upon his death.

20.     Decedent demonstrated his commitment to provide for Petitioner's welfare by making her the beneficiary of a ["Pay-on-Death"] account he held at Warren Federal Credit Union, in Cheyenne, Wyoming.

21.     Upon information and belief, Decedent made no plans for his estate that benefitted anyone other than Petitioner.

[¶4]   Mr. Scherer filed a motion to dismiss Ms. Knudson's petition.  The district court agreed with Mr. Scherer that Wyoming law does not recognize equitable adoption, and that equitable adoption would be contrary to Wyoming's probate code, which states that "foster children and their descendants do not inherit."  Wyo. Stat. Ann. § 2-4-104.  The district court also ruled that Wyoming's Determination of Heirship statutes, Wyo. Stat. Ann. § 2-9-201 *et seq.*, apply only to real property, not to personal property.  It granted the motion to dismiss, and Ms. Knudson appeals that decision.

## STANDARD OF REVIEW

[¶5]   We set forth the applicable standard of review in *Sinclair*, ¶ 8, 270 P.3d at 646:

> When reviewing W.R.C.P. 12(b)(6) motions to dismiss, we accept the facts stated in the complaint as true and view them in the light most favorable to the plaintiff.  We will sustain such a dismissal when it is certain from the face of the complaint that the plaintiff cannot assert any fact which would entitle him to relief.
>
> *Belden v. Lampert*, 2011 WY 83, ¶ 6, 251 P.3d 325, 327 (Wyo. 2011), quoting *Cramer v. Powder River Coal, LLC*, 2009 WY 45, ¶ 35, 204 P.3d 974, 983 (Wyo. 2009). . . . When we interpret statutes, our goal is to give effect to the intent of the legislature, and we "attempt to determine the legislature's intent based primarily on the plain and ordinary meaning of the words used in the statute." *Krenning v. Heart Mountain Irrigation Dist.*, 2009 WY 11, ¶ 9, 200 P.3d 774, 778 (Wyo. 2009).  Statutory interpretation presents a question of law, so our review of the district court's conclusions is *de*

3

*novo. Id.*; *Sinclair Oil Corp. v. Wyo. Dep't of Revenue*, 2010 WY 122, ¶ 7, 238 P.3d 568, 570 (Wyo. 2010).

### *DISCUSSION*

[¶6]    We discussed equitable adoption in depth in *In re Estate of Seader*, 2003 WY 119, 76 P.3d 1236 (Wyo. 2003).  We explained that the doctrine is based on the theory that "[O]ne who had agreed to adopt a child during his life, but for some reason did not, for inheritance purposes alone, will be considered to have […] adopted [the child]."  *Id.*, ¶ 10, 76 P.3d at 1240 (quoting 2 Am.Jur.2d, *Adoption* § 43 at 918-19 (1994)).  We observed the following description of equitable adoption:

> While a child to be adopted pursuant to an agreement between his natural parent and the adoptive parent cannot specifically enforce its adoption by the deceased adoptive parent, nevertheless, because of the agreement, he can obtain specific enforcement of the benefits that would accrue from such adoption – this remedy is sometimes referred to as an equitable adoption. . . .
>
> An [equitable adoption] is an equitable remedy to protect the interests of a person who was supposed to have been adopted as a child but whose adoptive parents failed to undertake the legal steps necessary to formally accomplish the adoption; the doctrine is applied in an intestate estate to give effect to the intent of the decedent to adopt and provide for the child.

*Seader*, ¶ 10, 76 P.3d at 1240 (quoting 2 Am.Jur.2d, *Adoption*, *supra*, § 53 at 929-30).  We listed the elements of equitable adoption as:

> (1) an implied or express agreement to adopt the child; (2) reliance on that agreement; (3) performance by the natural parents in giving up custody; (4) performance by the child in living in the home of, and in acting as the child of, the adoptive parents; (5) partial performance by the foster parents in taking the child into their home and treating the child as their child; and (6) the intestacy of the foster parents.

*Seader*, ¶ 12, 76 P.3d at 1241 (citing *Lankford v. Wright*, 489 S.E.2d 604, 606-07 (N.C. 1997)).

4

[¶7]    Ms. Knudson's argument that Wyoming has recognized equitable adoption rests chiefly on an older case, *Pangarova v. Nichols*, 419 P.2d 688 (Wyo. 1966).  In that case, Mr. Nichols' adult niece, Ms. Pangarova, lived in Bulgaria.  He offered to adopt her and make her his heir if she came to Casper, Wyoming, to live with him and his wife.  *Id*. at 690.  By the time she moved to Casper, Mr. Nichols' first wife had died, and he had remarried.  Mr. Nichols made a will naming Ms. Pangarova as the sole beneficiary of his estate.   *Id*. at 693.   Although she lived in the Nichols' home for a short time, Ms. Pangarova did not get along with the second wife, and soon moved to a separate apartment.   Mr. Nichols later changed his will to name his second wife as his sole beneficiary.   *Id*. at 693-94.   After Mr. Nichols died, Ms. Pangarova filed an action to recover damages for breach of the contract to adopt her and make her his heir.   *Id*. at 690-91.  The district court directed a verdict against Ms. Pangarova.   *Id*. at 691.  We reversed and remanded for a new trial.   *Id*. at 698.

[¶8]    Ms. Knudson contends that *Pangarova* establishes equitable adoption as a viable doctrine in Wyoming.  However, as we discussed in *Seader*, our decision in *Pangarova* is not quite that simple.

> In reversing and remanding for a new trial, this Court emphasized that the alleged contract did not deal solely with adoption, but promised that the uncle would make the niece his heir.   We concluded that "[s]uch contracts are not uncommon in the case of minor children and are 'generally construed to impose upon the adoptive parent an obligation to make the child an heir, which equity will specifically enforce.'" [*Pangarova*, 419 P.2d] at 695 (*quoting* R.P. Davis, Annotation, *Specific Performance of, or Status of Child Under, Contract to Adopt Not Fully Performed*, 171 A.L.R. 1315, 1318 (1947)).  This quoted language, taken from an annotation concerning enforcement of a contract to adopt, appears to be at least an indirect acceptance of the concept of equitable adoption.   However, the quoted language is followed immediately in the opinion by this sentence: "Our difficulty here is that an adult is involved."  *Pangarova*, 419 P.2d at 695.  Thereafter, we pursued neither that general issue – adoption of an adult – nor the specific issue of equitable adoption of an adult.  Instead, we cited several cases where the contract being enforced in equity was not simply a contract to adopt, but also contained a promise to make the adoptee an heir.  *Id*. at 695-96.
>
> On appeal after retrial, a jury verdict in favor of the niece was affirmed.  *Nichols v. Pangarova*, 443 P.2d 756

(Wyo. 1968). While reference is made in the second opinion to "a contract that decedent would adopt her and make her his heir," the concept of equitable adoption is not directly discussed. *Nichols*, 443 P.2d at 758. Instead, the discussion focuses on "a contract to devise or bequeath property," "an oral contract to make a will," and "an agreement to will property." *Id*. at 759, 761 and 762. In the final analysis, *Pangarova* is fundamentally not an equitable adoption case.

*Seader*, ¶¶ 18-19, 76 P.3d at 1242-43 (footnote omitted). Based on our interpretation of *Pangarova*, we warned in *Seader* that "Wyoming has not incontrovertibly recognized equitable adoption." *Id*., ¶ 14, 76 P.3d at 1241.

[¶9] In *Seader*, we also did not accept or reject equitable adoption. We instead concluded that it did not apply in the circumstances of that case. The decedent, Mr. Seader, had married Ms. Schroeder's mother when Ms. Schroeder was two years old. *Seader*, ¶ 2, 76 P.3d at 1237. Mr. Seader agreed at the time of the marriage to adopt Ms. Schroeder, but the adoption was never completed. In his will, Mr. Seader directed that most of his estate would be split equally among his two biological sons and Ms. Schroeder. *Id*., ¶ 3, 76 P.3d at 1238.

[¶10] Ms. Schroeder predeceased Mr. Seader, however. *Id*. The personal representative of Mr. Seader's estate proposed to distribute Ms. Schroeder's share of the estate to her two children. *Id*., ¶ 4, 76 P.3d at 1238. One of Mr. Seader's sons objected, contending that his father's testamentary devise to Ms. Schroeder failed pursuant to Wyo. Stat. Ann. § 2-6-106, which provided that "If a devisee who is a grandparent or a lineal descendent of a grandparent of the testator is dead at the time of execution of the will, fails to survive the testator, or is treated as if he predeceased the testator, the issue of the deceased devisee take in place of the deceased devisee." Ms. Schroeder was not a "lineal descendent" of Mr. Seader's grandparent and so, Mr. Seader's son asserted, he and his brother should take in her place. Ms. Schroeder's children asserted that the court should recognize her as having been equitably adopted by Mr. Seader, making her the equitable equivalent of a lineal descendent of Mr. Seader's grandparents so that his bequeath to Ms. Schroeder would go to her two children. *Seader*, ¶ 7, 76 P.3d at 1239.

[¶11] In our discussion of equitable adoption, we observed that "The majority of states recognize equitable adoption in one form or another, although the doctrine has been explicitly rejected in others. Almost exclusively, the application of the doctrine has been limited to intestate estates." *Id*., ¶ 13, 76 P.3d at 1241 (footnote omitted). We noted that Wyoming precedent "left considerable doubt as to the status of equitable adoption in Wyoming." *Id*., ¶ 22, 76 P.3d at 1243. Further, because Mr. Seader did not die intestate, "this case is quite unlike the usual equitable adoption case because its focus is not upon enforcing specific performance of a contract. Instead, its focus is upon statutory

construction." *Id*.

[¶12] Applying familiar rules of statutory interpretation, we gave plain meaning to the statutory phrase "lineal descendent" in Wyo. Stat. Ann. § 2-6-106. "A lineal descendent is a lineal descendent," we said. "We cannot create an ambiguity within the statute by asking whether we should apply an equitable doctrine to broaden the class of persons identified by the statute." *Seader*, ¶ 27, 76 P.3d at 1245. We also stated that the provisions of Mr. Seader's will were "clear and unambiguous and that they simply do not contain any hint of an intention on [his] behalf that the bequest and devise to [Ms. Schroeder] should be exempt from the anti-lapse statute." *Id*., ¶ 36, 76 P.3d at 1247. In conclusion, we declined "to apply the doctrine of equitable adoption to affect the distribution of a testate estate," because "[e]quity should not be available to countermand clear legislative mandates." *Id*., ¶ 38, 76 P.3d at 1248.

[¶13] Ms. Knudson's case does involve an intestate estate, and because neither *Pangarova* nor *Seader* incontrovertibly established whether equitable adoption is recognized in Wyoming, we answer that question here for the first time. As we said in *Seader*, ¶ 23, 76 P.3d at 1243, "the inter-related issues of adoption and the distribution of decedents' estates are purely statutory," and so we apply standard rules of statutory interpretation:

> First, we determine if the statute is ambiguous or unambiguous. A statute is unambiguous if its wording is such that reasonable persons are able to agree as to its meaning with consistency and predictability. Unless another meaning is clearly intended, words and phrases shall be taken in their ordinary and usual sense. Conversely, a statute is ambiguous only if it is found to be vague or uncertain and subject to varying interpretations.
>
> *Sinclair Oil Corp. v. Wyoming Dep't of Revenue*, 2010 WY 122, ¶ 7, 238 P.3d 568, 570-71 (Wyo. 2010) (quoting *BP America Production Co. v. Dep't of Revenue*, 2006 WY 27, ¶ 20, 130 P.3d 438, 464 (Wyo. 2006)). In determining whether a statute is ambiguous
>
> > [w]e begin by making an inquiry respecting the ordinary and obvious meaning of the words employed according to their arrangement and connection. We construe the statute as a whole, giving effect to every word, clause, and sentence, and we construe all parts of the statute *in pari materia*. When a statute is

7

sufficiently clear and unambiguous, we give effect to the plain and ordinary meaning of the words and do not resort to the rules of statutory construction.

*Ball v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2010 WY 128, ¶ 29, 239 P.3d 621, 629 (Wyo. 2010).

*Anderson v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2010 WY 157, ¶ 9, 245 P.3d 263, 266-67 (Wyo. 2010).

[¶14]  Both parties focus on Wyo. Stat. Ann. § 2-4-104.  It provides that "Persons of the half-blood inherit the same share they would inherit if they were of the whole blood, ***but stepchildren and foster children and their descendants do not inherit***." (emphasis added).  The term "foster children" is not defined in the probate code, but we agree with the district court that a foster child "is a child whose parental care and upbringing has been left to persons other than his natural parents or legal relatives."  *See* Black's Law Dictionary 290 (10th ed. 2014).

[¶15]  Mr. Scherer contends that Ms. Knudson was, at most, the decedent's foster child.  He maintains that the language of the statute is clear and the meaning plain: Ms. Knudson, a foster child, does not inherit.  Ms. Knudson counters by relying on another provision of the probate statutes, Wyo. Stat. Ann. § 2-1-102(b), which provides that "Unless displaced by the particular provisions of this code, the principles of law and equity supplement the code provisions."  She asserts that the statutory provision does not displace the doctrine of equitable adoption, and the doctrine can be applied to supplement the provisions of Wyoming's probate code.  She points out that the provision concerning foster children does not provide that they ***cannot*** inherit, only that they ***do not*** inherit if they are ***only*** foster children.  She claims to be not merely the foster child of the decedent, but also his equitably adopted child.

[¶16]  The statute must be interpreted in the context of other provisions of the probate code. *In re Estate of Kirkpatrick*, 2003 WY 125, ¶ 6, 77 P.3d 404, 406 (Wyo. 2003) ("In ascertaining the meaning of a given law, we consider all statutes relating to the same subject or having the same general purpose and construe them in harmony.").  In broad terms, Wyoming's probate code establishes that the property of a person dying intestate is distributed to the surviving spouse and children in the first instance.  Wyo. Stat. Ann. § 2-4-101(a)(i).  The code also clearly indicates who is to be treated as "children" or a "child."  Wyo. Stat. Ann. § 2-1-301(a)(v) states that the term "child" includes "an adopted child but does not include a grandchild or other more remote descendent, nor, except as provided in Chapter 4, an illegitimate child."  Wyo. Stat. Ann. § 2-4-102 sets forth rules of descent for illegitimate children.  Wyo. Stat. Ann. § 2-4-104 provides for persons of half-blood and, as previously discussed, that "stepchildren and foster children and their descendents do not inherit."  Wyo. Stat. Ann. § 2-4-106 directs that the divorce

8

of parents does not affect the right of children to inherit. Wyo. Stat. Ann. § 2-4-107 provides additional details regarding the treatment of adopted children.

[¶17] Our reason for listing these provisions is to show that the probate code provides substantial detail specifying how the relationships of parent and child, in all their variations, are to be treated. But the code never mentions equitable adoption, and we cannot presume this was an inadvertent oversight. To the contrary, "[w]e presume that statutes are enacted by the legislature with full knowledge of existing law." *Seader*, ¶ 23, 76 P.3d at 1244. Accordingly, the "omission of words from a statute is considered to be an intentional act by the legislature, and this court will not read words into a statute when the legislature has chosen not to include them." *Stroth v. North Lincoln County Hosp. Dist.*, 2014 WY 81, ¶ 13, 327 P.3d 121, 127 (Wyo. 2014) (quoting *Walters v. State ex rel. Wyo. DOT*, 2013 WY 59, ¶ 18, 300 P.3d 879, 884 (Wyo. 2013) and *Adelizzi v. Stratton*, 2010 WY 148, ¶ 11, 243 P.3d 563, 566 (Wyo. 2010)).

[¶18] The probate code of at least one other state makes explicit provision for equitable adoption. "Nothing in this chapter affects or limits application of the judicial doctrine of equitable adoption for the benefit of the child or the child's issue." Cal. Prob. Code § 6455 (2014). If the Wyoming Legislature had wanted to preserve or introduce equitable adoption as part of Wyoming's probate code, it could have said so. It did not, and that is another factor in our conclusion that equitable adoption is displaced by the provisions of our probate code.

[¶19] Wyo. Stat. Ann. § 2-1-102, entitled "Rules of construction and applicability," also sheds light on the intent of the legislature. It provides, in relevant part:

> (a) This code shall be liberally construed and applied, to promote the following purposes and policies to:
>
> > (i) Simplify and clarify the law concerning the affairs of decedents, missing persons, protected persons, minors and incapacitated persons;
> >
> > (ii) Discover and make effective the intent of a decedent in distribution of his property; [and]
> >
> > (iii) Promote a speedy and efficient system for liquidating the estate of the decedent and making distribution to his successors[.]

The foster children provision of Wyo. Stat. Ann. § 2-4-104 must be interpreted in light of the stated overall goals of simplicity, clarity, speed, and efficiency. Our complex and difficult decisions in *Pangarova* or *Seader* amply demonstrate that the doctrine of

9

equitable adoption is anything but simple, clear, or speedy in application. In fact, we agree with the Supreme Court of Utah that "The doctrine of equitable adoption undermines these objectives by introducing uncertainty, complexity, and inefficiency – the very evils the Probate Code was designed to avoid." *In re Estate of Hannifin*, 2013 UT 46, ¶ 29, 311 P.3d 1016, 1023 (Utah 2013).

[¶20] Another expressed purpose of the probate code is to "[d]iscover and make effective the intent of a decedent in distribution of his property." Wyo. Stat. Ann. § 2-1-102(a)(ii). In her petition, Ms. Knudson alleged that the decedent had advised her mother that he considered her "as his heir who would inherit his estate upon his death." She claims that he intended to provide for her, and that recognizing her as his equitably adopted child would effectuate his intent. This case comes before us because the district court granted a motion to dismiss. Ms. Knudson has not had an opportunity to present any evidence concerning the decedent's intent, and so of course we cannot evaluate that evidence. The reason we discuss the decedent's intent here is to observe that there are at least two straightforward ways the decedent could have expressed his real intent. He could have adopted Ms. Knudson or provided for her in a will. He did neither.

[¶21] Based on our interpretation of Wyoming's probate code, we hold that Wyoming does not recognize the doctrine of equitable adoption. Ms. Knudson's other two claims seek interpretation of Wyoming's Determination of Heirship statutes, Wyo. Stat. Ann. § 2-9-201, *et seq*. Because her equitable adoption claim fails, she is not an heir, and these statutes do not apply. We therefore do not need to consider these last two issues. We affirm the district court's dismissal of Ms. Knudson's petition.

10