# IN THE SUPREME COURT, STATE OF WYOMING

## 2020 WY 70

### APRIL TERM, A.D. 2020

### June 10, 2020

ROBERT J. CRAFT and SABRINA CRAFT,
individually and as Personal Representative of the
Estate of Robert James Anderson,

Appellants
(Plaintiffs),

v.

STATE OF WYOMING ex rel., WYOMING
DEPARTMENT OF HEALTH; WYOMING
STATE HOSPITAL; THOMAS O. FORSLUND,
individually and in his official capacity as Director
of the Wyoming Department of Health; RICHARD
DUNKLEY, individually and in his official capacity
as Administrator of the Wyoming State Hospital;
DAVID CARRINGTON, M.D.; SARAH J.
ROGERS, Ph.D.; JAMES FLEENOR, PMHNP-BC;
MARTHA MUELLER, FNP-BC; SARA YOUNG,
RN; XANDREA VROOMAN; STEVE BILLMAN;
MICHAEL SAXTON; LIDIA GARCIA; EDGAR
HERNANDEZ-BAUTISTA; ANTOINETTE
"SHELBY" HUTCHERSON; RENITA
HURDSMAN; GIOVANNI CERDA; PAUL
MULLENAX; BILL SEXTON; JENNIFER
SCHMIDT-ARROYO; JENNIFER ALEXANDER
and SPENCER KIMBLE,

Appellees
(Defendants).

S-19-0191

*Appeal from the District Court of Laramie County*
*The Honorable Peter H. Froelicher, Judge*

***Representing Appellants:***

    *Deborah Ford Mincer, Cheyenne, Wyoming. Argument by Ms. Mincer.*

***Representing Appellees State of Wyoming ex rel. Wyoming Dep't of Health; Wyoming State Hospital; Thomas O. Forslund; Richard Dunkley; David Carrington, M.D.; Sarah J. Rogers, Ph.D.; James Fleenor, PMHNP-BC; Sara Young, RN; Xandrea Vrooman; Steve Billman; Michael Saxton; Lidia Garcia; Edgar Hernandez-Bautista; Antoinette "Shelby" Hutcherson; Giovanni Cerda; Paul Mullenax; Bill Sexton; Jennifer Schmidt-Arroyo; Jennifer Alexander; Spencer Kimble:***

    *Bridget L. Hill, Wyoming Attorney General; Misha Westby, Deputy Attorney General; Amy A. Pauli, Senior Assistant Attorney General; Maddisen L. Gorman, Assistant Attorney General. Argument by Ms. Pauli.*

***Representing Appellee Martha Mueller, FNP-BC:***

    *Mark Collier and Kendra Beckwith of Messner Reeves LLP, Denver, Colorado. Argument by Ms. Beckwith.*

***Representing Appellee Renita Hurdsman:***

    *Amanda Hunkins Newton of Crowley Fleck, PLLP, Cheyenne, Wyoming.\**

**Before DAVIS, C.J., and FOX, KAUTZ, and GRAY, JJ., and PEASLEY, D.J.**

*\*Appellee Renita Hurdsman's Joinder in Brief of Appellees was filed on December 12, 2019.*

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**PEASLEY, District Judge**.

[¶1]   On June 13, 2015, Robert Anderson died while in the custody of the Wyoming State Hospital ("Hospital").  Prior to his death, Mr. Anderson had been adopted by his since deceased paternal grandmother.  On June 5, 2018, Robert Craft and Sabrina Craft filed suit against the Hospital and staff for various claims, including medical malpractice, negligence, and wrongful death.  Mr. Craft is both Mr. Anderson's biological father and his adoptive brother.  Ms. Craft is Mr. Anderson's appointed personal representative. The district court dismissed the complaint, in part because it concluded the Crafts lacked standing and had failed to state a claim under W.R.C.P. 12(b)(6).  It reasoned that the Crafts were not qualified wrongful death beneficiaries because of Mr. Anderson's adoption.  The district court further concluded that Dr. Sarah Rogers, Ph.D. (a Hospital psychologist) and the Hospital were immune from suit under the Wyoming Governmental Claims Act ("WGCA").  We conclude that, as Mr. Anderson's adoptive brother, Mr. Craft is a qualified wrongful death beneficiary, and that the Crafts' allegations of wrongful death, medical malpractice and negligence are sufficient to survive a motion to dismiss.  We further hold that Dr. Rogers and the Hospital are not immune from suit.  We reverse and remand for further proceedings.

## ISSUES

[¶2]   We frame the issues on appeal as follows:

> 1.    As Mr. Anderson's adoptive half-brother, is Mr. Craft a qualified beneficiary under the wrongful death statutes, such that he has standing to maintain this action?
>
> 2.    Are Dr. Rogers and the Hospital immune from suit under the WGCA?

## FACTS[1]

[¶3]   Mr. Craft's biological mother adopted Mr. Anderson prior to the events giving rise to these proceedings.  As a result, Mr. Craft's mother, now deceased, became Mr. Anderson's adoptive mother and Mr. Craft, the proposed wrongful death beneficiary, became Mr. Anderson's adoptive half-brother.  Sabrina Craft is married to Mr. Craft and is the appointed personal representative for Mr. Anderson.

[¶4]   In August of 2014, Mr. Anderson entered a plea of not guilty by reason of mental illness to criminal charges.  Following his plea, Mr. Anderson was transported to the

---

[1] For purposes of review, the facts are taken from the allegations in the complaint and accepted as true. *Wyo. Guardianship Corp. v. Wyo. State Hosp.*, 2018 WY 114, ¶ 3 n.2, 428 P.3d 424, 428 n.2 (Wyo. 2018).

Hospital in Evanston, Wyoming for a forensic evaluation. The Hospital assigned Dr. Sarah Rogers to perform this evaluation.

[¶5]    At the time of his death, Mr. Anderson had resided at the Hospital for eight (8) months and was being treated for serious medical conditions. While in the custody of the Hospital, Mr. Anderson was prescribed various medications and made complaints of symptoms in his right arm and other areas of his body. The complaint alleges that Mr. Anderson's death was more likely than not due to the drugs given to him and that the toxicology reports showed that Mr. Anderson had anti-depressants in his system at levels that exceeded therapeutic range.

[¶6]    After complying with the claim requirements of the WGCA, the Crafts filed suit against the Hospital and some of its employees and contractors. The complaint included eight separate causes of action, including: 1) state law and 42 U.S.C. § 1983 claims for wrongful death and personal injury; 2) violation of 42 U.S.C. § 1983 as to Robert Craft and Sabrina Craft; 3) Unlawful Policies, Customs, or Habits under 42 U.S.C. § 1983; 4) State Constitutional Violations; 5) State Tort Claims for Wrongful Death and Medical Malpractice; 6) Vicarious Liability; 7) Ordinary Negligence; and 8) Injunctive relief.

[¶7]    The Appellees filed motions to dismiss, and the district court granted the motions, dismissing the complaint in its entirety without prejudice. The district court dismissed the state and federal wrongful death actions under W.R.C.P. 12(b)(6) and for lack of standing, concluding that the adoption rendered Mr. Craft an unqualified beneficiary for whose benefit a wrongful death action could be maintained, and because the complaint failed to satisfy the elements necessary to show deliberate indifference. For similar reasons, the district court dismissed the 42 U.S.C. § 1983 claims for violation of Familial Association and for Unlawful Policies, Customs, or Habits for lack of standing, and for failure to state a claim upon which relief could be granted. The district court concluded the adoption severed Mr. Craft's right to bring such a claim, and the complaint lacked the necessary allegations concerning the Defendants' intent to interfere with the family. The district court dismissed the state constitutional claims because the "Wyoming Legislature has not authorized such an action." The district court dismissed the medical malpractice and negligence claims because it found that the Hospital and its employees were immune from suit. Furthermore, the district court dismissed the medical malpractice claims against Defendants Mullenax, Sexton, Schmidt-Arroyo, Alexander and Kimble under the two-year statute of limitations because these defendants were not named in the original claim to the medical review panel. Finally, the district court dismissed the claim for vicarious liability under W.R.C.P. 12(b)(6) and the injunctive relief claim for lack of standing and failing to establish a "sufficient personal interest in the outcome."

[¶8]    On appeal, the Crafts challenge the district court's dismissal of the wrongful death and ordinary negligence claims, and some of the medical malpractice claims. Dispositive on appeal is the district court's conclusion that the adoption disqualified Mr. Craft from

2

being a recognized wrongful death beneficiary pursuant to Wyo. Stat. Ann. § 1-38-102 because he had no "familial connection" to Mr. Anderson, and that the Hospital and its employees were immune from suit. The Crafts do not challenge the dismissal of the medical malpractice claims against Defendants Mullenax, Sexton, Schmidt-Arroyo, Alexander and Kimble; the state constitutional claim; the vicarious liability claim or the injunctive relief claim, and we do not address those matters in this appeal. The Crafts only challenge the 42 U.S.C. § 1983 claims to the extent that the district court dismissed them based on a lack of standing, intending to refile them to sufficiently allege facts necessary for those claims to survive a motion to dismiss. Thus, as to the section 1983 claims, we only review the district court's conclusion that the Crafts lack standing to bring those claims.

## STANDARD OF REVIEW

[¶9]    Our review of a motion to dismiss, whether under W.R.C.P. 12(b)(6) or 12(b)(1), is de novo. *Allred v. Bebout*, 2018 WY 8, ¶ 29, 409 P.3d 260, 268 (Wyo. 2018). "[W]e employ the same standards and examine the same materials as the district court: we accept the facts alleged in the complaint or petition as true and view them in the light most favorable to the non-moving party." *Moose Hollow Holdings, LLC v. Teton Cty. Bd. of Cty. Comm'rs*, 2017 WY 74, ¶ 20, 396 P.3d 1027, 1033 (Wyo. 2017) (quoting *Guy v. Lampert*, 2015 WY 148, ¶ 12, 362 P.3d 331, 335 (Wyo. 2015)). When we review dismissal of a complaint for lack of jurisdiction, "we focus on the allegations contained in the complaint and liberally construe them in the light most favorable to the plaintiff." *William F. West Ranch, LLC v. Tyrrell*, 2009 WY 62, ¶ 9, 206 P.3d 722, 726 (Wyo. 2009) (quoting *Cox v. City of Cheyenne*, 2003 WY 146, ¶ 7, 79 P.3d 500, 504-05 (Wyo. 2003)). Dismissal is appropriate only if it is certain on the face of the complaint that the plaintiff cannot assert any facts that create entitlement to relief. *Dowlin v. Dowlin*, 2007 WY 114, ¶ 6, 162 P.3d 1202, 1204 (Wyo. 2007); W.R.C.P. 12(b)(6); *Ecosystem Res., L.C. v. Broadbent Land & Res., L.L.C.*, 2007 WY 87, ¶ 8, 158 P.3d 685, 687 (Wyo. 2007).

[¶10] The district court concluded that the Crafts lacked standing to bring suit for wrongful death. Decisions on standing involve questions of justiciability and are, therefore, reviewed *de novo. Bird v. Lampert*, 2019 WY 56, ¶ 7, 441 P.3d 850, 853-54 (Wyo. 2019).

## DISCUSSION

### Statutory standing and failure to state a claim

[¶11]  The district court dismissed the state and federal wrongful death claims for lack of standing and under W.R.C.P. 12(b)(6) for failure to state a claim upon which relief could be granted. As noted, the Crafts do not challenge the district court's dismissal of the 42

U.S.C. § 1983 claims, only its conclusion that the Crafts lacked standing to bring a wrongful death action. The standing analysis applies to the state law and 42 U.S.C. § 1983 wrongful death claims. The district court concluded that the adoption severed Mr. Craft's parental rights and precluded his ability to recover damages in a wrongful death suit. The district court held that "Robert Craft is not entitled to any damages for the alleged injuries because he cannot inherit from Mr. Anderson and he cannot prove he was injured by [Mr.] Anderson's death." The district court concluded the Crafts lacked standing for similar reasons.

[¶12] "Statutory standing is a close cousin of prudential standing, and looks to whether '*this* plaintiff has a cause of action under the statute.'" *In re L-MHB*, 2018 WY 140, ¶ 20, 431 P.3d 560, 567 (Wyo. 2018) (quoting *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 97 n.2, 118 S.Ct. 1003, 1013 n.2, 140 L.Ed.2d 210 (1998)) (emphasis in original). When a party lacks standing to sue under the statute at issue, his "claim should be dismissed for failure to state a claim upon which relief can be granted." *In re L-MHB*, ¶ 20, 431 P.3d at 567. Thus, we consider whether the Crafts have a cause of action under the wrongful death statutes. This analysis resolves both the conclusion that the complaint should be dismissed under 12(b)(6) and for a lack of standing.

[¶13] Wyoming Statutes governing wrongful death actions are found at Wyo. Stat. Ann. § 1-38-101, *et seq.* As we set forth in *Harris v. Grizzle*, 599 P.2d 580, 583 (Wyo. 1979):

> The essentials of such a wrongful death complaint are: (1) the plaintiff's capacity to sue as personal representative of the deceased; (2) that the plaintiffs are the persons entitled by statute to damages; (3) allege sufficient facts to show in what particular the defendant or defendants were negligent; (4) that the defendants' negligence was the proximate cause of death; and (5) damages. The sufficiency of the pleading with regard to any or all of these is a matter for determination within the context of each case.

(Internal citations omitted.)

[¶14] In *Butler v. Halstead By & Through Colley*, 770 P.2d 698, 700 (Wyo. 1989), we held that the persons for whose benefit a wrongful death action is brought are all of those persons identified in the intestate succession statute, Wyo. Stat. Ann. § 2-4-101. Included within the statutory framework for intestate succession are the "brothers and sisters." Wyo. Stat. Ann. § 2-4-101(c)(ii). Wyo. Stat. Ann. § 2-4-101(c)(ii) (LexisNexis 2019) provides:

> If there are no children, nor their descendants, then to his father, mother, brothers and sisters, and to the descendants of

4

brothers and sisters who are dead, the descendants collectively taking the share which their parents would have taken if living, in equal parts.

We presume that statutes are enacted by the legislature with full knowledge of existing law, so we construe statutes in harmony with existing law, particularly other statutes relating to the same subject or having the same purpose. *Hede v. Gilstrap*, 2005 WY 24, ¶ 6, 107 P.3d 158, 163 (Wyo. 2005). The wrongful death statutes, in harmony with the adoption statutes, include siblings created by the adoption as "heirs" who stand to inherit. Correspondingly, these heirs are "persons entitled by statute to damages" and have standing to bring a wrongful death action.

[¶15] In finding that Mr. Craft could not meet element numbers 2 and 5, the district court relied, in part, on our holding in *In re Estate of Kirkpatrick*, 2003 WY 125, ¶¶ 11-14, 77 P.3d 404, 407-08 (Wyo. 2003) wherein we held, "The only connection statutorily preserved between the biological family and the adopted child is the express right of the adopted child to inherit from his biological parents."

[¶16] The adoption statutes state at Wyo. Stat. Ann. § 1-22-114(a) (LexisNexis 2019):

(a) Upon the entry of a final decree of adoption the former parent, guardian or putative father of the child shall have no right to the control or custody of the child. The adopting persons shall have all of the rights and obligations respecting the child as if they were natural parents.

The adoption statutes and our precedent recognize that an adoption severs the parent-child relationship. "A decree of adoption tears asunder forever the parent-child relationship and for all legal and practical purposes, that child is the same as dead to the parent affected." *In re Estate of Kirkpatrick*, ¶ 16, 77 P.3d at 408 (quoting *In re Adoption of Voss*, 550 P.2d 481, 485 (Wyo. 1976)); *See also In the Matter of the Adoption of CJH*, 778 P.2d 124, 126 (Wyo. 1989); *In re Adoption of CF*, 2005 WY 118, ¶ 11, 120 P.3d 992, 999 (Wyo. 2005). With the severance of the parent-child relationship in an adoption, comes an equally important corollary; a family created by the adoption. As we recognized in *Kirkpatrick*, "[t]he adoption decree severs the relationship between the child and his biological parents and ***creates a new and exclusive parent-child relationship between the child and the adoptive parents.***" *Id.*, ¶ 16, 77 P.3d at 408 (emphasis added). In this case, the adopted child's biological grandmother became his adoptive mother, granting her "all of the rights and obligations respecting the child as if [she was the] natural parent[]." Wyo. Stat. Ann. § 1-22-114.

[¶17] We recognize the importance of severing parental rights after an adoption. However, there is an equally important objective of fully assimilating the adopted child

into the adoptive family. The adoption statutes promote and recognize this assimilation with a legal relationship of parent and child.

[¶18] An adoption provides a child not only with new parents but new siblings as well. The adoption statutes do not specifically limit or restrict the identity of adoptive siblings, and Courts are not free to legislate under the guise of interpretation of statutes. "[I]t is just as important to recognize what a statute does not say as it is to recognize what it does say." *In re Adoption of Voss*, 550 P.2d at 485. The adoption statutes do not preclude the creation of a sibling relationship between the adopted child and his adoptive parent's other children; there is nothing in the adoption statutes that qualifies or restricts the identity of adoptive siblings beyond those children, adopted or biological, of the adoptive parents.

[¶19] The omission of words from a statute "must be considered intentional on the part of the legislature. Words may not be supplied in a statute where the statute is intelligible without the addition of the alleged omission." *In Interest of ECH*, 2018 WY 83, ¶ 26, 423 P.3d 295, 304 (Wyo. 2018) (quoting *In re Adoption of Voss*, 550 P.2d at 485 (internal citation omitted)). The legislature could easily have chosen to restrict or limit the relationship between an adopted child and his adoptive family if it had intended that result. Severing the "parent-child" relationship is not the same as restricting or limiting the identity of an adoptive family.

[¶20] This Court recognized in *Kirkpatrick* that, with the severance from the biological parents, there is "the new unity with the adoptive parents." *In re Estate of Kirkpatrick*, ¶ 16, 77 P.3d at 408. Siblings include those within the adoptive family. *Id.*, ¶ 13, 77 P.3d at 408. Furthermore, "when referring to 'mother' and 'father,' § 2-4-101 is plain and unambiguous in the context of adoption. 'Mother' refers to the *adoptive* mother, who is given *all rights* by § 1-22-114." *Id.* (emphasis in original). The same is true of the term father. These rights necessarily include the rights of the adoptive siblings to be a part of the new family created by the adoption.

[¶21] An adopted person's right to inherit from adoptive parents is provided by Wyo. Stat. Ann. § 2-4-107, which states:

> (a) If for purposes of intestate succession, a relationship of parent and child shall be established to determine succession by, through or from a person:
>
> (i) An adopted person is the child of an adopting parent for inheritance purposes . . . ;
>
> (ii) An adopted person shall inherit from all other relatives of an adoptive parent as though he was the

6

natural child of the adoptive parent and **the relatives shall inherit from the adoptive person's estate as if they were his relatives**.

(Emphasis added.) "Relatives" includes brothers and sisters. The intestate statutes recognize "brothers" and "sisters" for inheritance purposes, and a brother is "a male who has the same parents as another, or one parent in common with another." *Kirkpatrick*, ¶ 13, 77 P.3d at 408. Through the adoption, Mr. Craft and Mr. Anderson had one parent in common with another, thereby fitting the definition of "brothers."

[¶22] It would be an unwarranted extension and presumption to assume that, by specifying those relationships entitled to inherit, the legislature intended to exclude others because of any level of consanguinity severed by an adoption. The clear language of the intestacy statutes allows for an adopted child to inherit from his adoptive parent and for relatives, including adoptive brothers, to inherit from the adoptive child. "Our rules of descent provide that only those persons who are the heirs at law at the time of death of an individual who dies intestate are entitled to succeed to his estate." *Rist v. Taylor*, 955 P.2d 436, 438 (Wyo. 1998).

[¶23] The intestate laws and wrongful death statutes[2] do not exclude adoptive siblings for any reason. We will not insert language into a statute that the legislature omitted. *Cheyenne Newspapers, Inc. v. City of Cheyenne*, 2016 WY 125, ¶ 19, 386 P.3d 329, 335 (Wyo. 2016).

[¶24] As the adoptive brother, Mr. Craft qualifies as a beneficiary under the intestacy laws and has the right to bring a wrongful death action. Mr. Craft is an heir with a "tangible interest" in the outcome of this controversy. *State ex rel. Bayou Liquors, Inc. v. City of Casper*, 906 P.2d 1046, 1048 (Wyo. 1995). For these reasons, the district court's order dismissing the claim for wrongful death is hereby reversed and remanded for further proceedings.

***Waiver of immunity under Wyoming Governmental Claims Act***

[¶25] The district court dismissed the state law claims for wrongful death and medical malpractice based upon the court's conclusion that Dr. Rogers was not a "health care provider" as defined by Wyo. Stat. Ann. § 1-39-110, and therefore no exception to sovereign immunity applied. Further, the district court concluded that the exception included in § 1-39-109 was not an available waiver to sovereign immunity because the

---

[2] Wyo. Stat. Ann. § 1-38-102(a) (LexisNexis 2019) identifies those who have standing to bring a wrongful death action stating, in pertinent part, that "[e]very wrongful death action under W.S. § 1-38-101 shall be brought by and in the name of the decedent's wrongful death representative for the exclusive benefit of beneficiaries who have sustained damage."

7

Crafts failed to allege that the Defendants were negligent public employees acting within the scope of their duties in the operation of a public hospital.

[¶26] When interpreting the WGCA, we apply the following rules of statutory interpretation: Our goal is to give effect to the intent of the legislature, and we "attempt to determine the legislature's intent based primarily on the plain and ordinary meaning of the words used in the statute." *Krenning v. Heart Mountain Irrigation Dist.*, 2009 WY 11, ¶ 9, 200 P.3d 774, 778 (Wyo. 2009). Statutory interpretation presents a question of law, so our review of the district court's conclusions is *de novo*. *Id.*; *Sinclair Oil Corp. v. Wyo. Dep't of Revenue*, 2010 WY 122, ¶ 7, 238 P.3d 568, 570 (Wyo. 2010).

[¶27] When reviewing claims under the WGCA, we have said that we should not "enlarge, stretch, expand or extend" the statutory language to include "matters not falling within its express provisions." *State, Dep't of Corr. v. Watts*, 2008 WY 19, ¶ 19, 177 P.3d 793, 798 (Wyo. 2008). Instead, we use our "standard rules" of statutory interpretation "to determine whether the legislature intended that immunity be waived for a particular claim and will not resort to reliance upon previous unsupported and unnecessary suggestions that the act is to be interpreted either liberally or strictly." *Id.*, ¶ 20, 177 P.3d at 798-99; *Stroth v. North Lincoln County Hosp. Dist.*, 2014 WY 81, ¶ 7, 327 P.3d 121, 125 (Wyo. 2014) (quoting *Sinclair v. City of Gillette*, 2012 WY 19, ¶ 9, 270 P.3d 644, 646 (Wyo. 2012)); *Fugle v. Sublette Cty. Sch. Dist. No. 9*, 2015 WY 98, ¶ 8, 353 P.3d 732, 735 (Wyo. 2015). The WGCA is a closed-end tort claims act, *Worden v. Village Homes*, 821 P.2d 1291, 1295 (Wyo. 1991); *Harbel v. Wintermute*, 883 P.2d 359, 363 (Wyo. 1994), and serves to bar all claims against governmental employees unless it falls within one of the statutory exceptions. *State, Dep't of Corr.*, ¶ 14, 177 P.3d at 797. With certain exceptions, the WGCA provides governmental entities and public employees with immunity from liability. Wyo. Stat. Ann. § 1-39-104. Section 1-39-104(a) (LexisNexis 2019) of the WGCA states:

> (a)    A governmental entity and its public employees while acting within the scope of duties are granted immunity from liability for any tort except as provided by W.S. 1-39-105 through 1-39-112.

[¶28] The decision of whether to waive immunity for a governmental entity belongs to the Wyoming Legislature, not this Court. Wyo. Const. art. 1, § 8; *Campbell Cty. Mem'l Hosp. v. Pfeifle*, 2014 WY 3, ¶ 29, 317 P.3d 573, 580 (Wyo. 2014). The Hospital is a governmental entity as that phrase is defined in Wyo. Stat. Ann. § 1-39-103(a)(i). The list of 14 state institutions created by the legislature includes the Wyoming State Hospital in Evanston. Wyo. Stat. Ann. § 25-1-201(a)(x) (LexisNexis 2019); *see also Pfeifle*, ¶ 26, 317 P.3d at 580. Applicable exceptions to immunity under the WGCA include Wyo. Stat. Ann. § 1-39-109 and § 110. Section 109(a) provides:

(a)    Except as provided in subsection (b) of this section, a governmental entity is liable for damages resulting from bodily injury, wrongful death or property damage caused by the negligence of public employees while acting within the scope of their duties in the operation of any public hospital or in providing public outpatient health care.

[¶29]  Dr. Rogers argues, and the district court agreed, that she is not a health care provider and is therefore not subject to liability under Wyo. Stat. Ann. § 1-39-110.  We need not address whether Dr. Rogers is a health care provider under section 110 because our analysis of section 109 is dispositive.  Because the Hospital is a public hospital, sovereign immunity against it is waived under § 109 if Dr. Rogers qualifies as a public employee acting within the scope of her duties in the operation of the Hospital.  Wyo. Stat. Ann. § 1-39-109(a).

[¶30]  The term "public employee" as used in § 1-39-103 is defined by the WGCA as follows:

(iv)   "Public employee":

(A)   Means ***any officer, employee or servant*** of a governmental entity, including elected or appointed officials, peace officers and persons acting on behalf or in service of a governmental entity in any official capacity, whether with or without compensation.

Wyo. Stat. Ann. § 1-39-103(a)(iv)(A) (emphasis added).  According to the complaint, Dr. Rogers was obligated, pursuant to Wyo. Stat. Ann. § 7-11-304, to provide a written report; a forensic "evaluation" concerning Mr. Anderson's mental health.  A psychologist assigned to perform a forensic evaluation for an inmate at the Hospital could be a "public employee" as defined by the WGCA under the standard of review applicable to a complaint challenged by a motion to dismiss.  The complaint alleges that Dr. Rogers was conducting the evaluation at the behest of the Hospital, and pursuant to statutory directive.  The germane issue is whether the complaint sufficiently alleges that Dr. Rogers was acting within the scope of her duties in the "operation of any public hospital."  Wyo. Stat. Ann. § 1-39-109(a).

[¶31]  The legislature did not define the term "operation" as used in the Act, Wyo. Stat. Ann. § 1-39-109(a).  When a term is not defined in a statute, this Court will furnish an ordinary and obvious meaning.  *Sheridan Commercial Park, Inc. v. Briggs*, 848 P.2d 811, 815 (Wyo. 1993) (citing *Parker Land & Cattle Co. v. Wyoming Game & Fish Comm'n*, 845 P.2d 1040, 1042 (Wyo. 1993)).  In the context of immunity under the WGCA, in *City of Torrington v. Cottier*, 2006 WY 145, ¶¶ 8-9, 145 P.3d 1274, 1278 (Wyo. 2006), we

9

considered the definition of operation being the "state of being operative or functional," and concluded that the legislature included maintenance in the phrase "operation of a public utility." Under the ordinary and obvious meaning of "operation," providing an evaluation of Mr. Anderson's mental health for the Wyoming State Hospital and observing and evaluating him in pursuit of restoring his competence qualifies as operations the Hospital regularly conducts, and as a normal component of the State Hospital's functionality. Mr. Anderson had been at the Hospital as a patient for over eight (8) months at the time of his death. The complaint alleges that Dr. Rogers and the Hospital were treating Mr. Anderson throughout this extensive stay in pursuit of restoring his competency. Wyo. Stat. Ann. § 7-11-304(d) (LexisNexis 2019) provides, in pertinent part:

> If the order provides for commitment of the defendant to a designated facility, the commitment shall continue no longer than a forty-five (45) day period for the observation and evaluation of the mental condition of the defendant, which time may be extended by the approval of the court.

[¶32] The complaint alleges that Mr. Anderson was not properly diagnosed, treated, or monitored during his stay at the Hospital, resulting in his death. Forensic evaluations and the related requirement to "observe and evaluate" a patient fall within the scope of regular duties for psychologists at the Hospital. The complaint adequately alleges that Dr. Rogers was working for the Hospital at the relevant times and conducting work as described at Wyo. Stat. Ann. § 7-11-304. For example, at paragraph 13 of the complaint, Crafts allege that Dr. Rogers

> was assigned as an evaluator for Robert James Anderson while he was in the Wyoming State Hospital. Each of the acts and omissions of Dr. Rogers were done by her by virtue of and under her authority as an employee or agent for Defendants State of Wyoming and the Wyoming State Hospital.

[¶33] At paragraph 26 of the complaint, Crafts allege:

> The Wyoming State Hospital, through the representations of Dr. Sarah Rogers, kept Mr. Anderson purportedly to restore him to competence. Dr. Rogers' reports and recommendations were not supported by Mr. Anderson's history and his treatment records. Mr. Anderson had been at the Wyoming State Hospital for over eight months at the time of his death. Mr. Anderson had a "loss of chance" for

10

survival or a better outcome because Dr. Rogers failed to properly care for him.

In the cause of action for negligence, Crafts allege duty, breach, proximate cause, and damages for a variety of claims, including for a "loss of chance" to survive. Dr. Rogers was alleged to have been employed by the Hospital, which is adequate to qualify for an exception to immunity under Section 109 at the pleadings stage of the proceedings. The allegations are sufficient for purposes of raising claims upon which relief can be granted, and the district court has subject matter jurisdiction to determine the same. For these reasons, the order dismissing the claims for wrongful death, medical malpractice, and negligence against Dr. Rogers and the Hospital must be reversed and remanded.

## *CONCLUSION*

[¶34] Though the adoption severed Mr. Craft's parental rights to Mr. Anderson, as his adoptive brother, Mr. Craft is a beneficiary entitled to recover damages. Thus, the Crafts have standing to bring a wrongful death complaint, and the complaint adequately states claims upon which relief can be granted for wrongful death, negligence, and medical malpractice. Wyo. Stat. Ann. § 1-39-109 is an exception to sovereign immunity, and the allegations against Dr. Rogers that she was an employee of the Wyoming State Hospital acting within the scope of her employment in the operation of the Hospital, subjecting the Hospital to liability for her conduct, are sufficient to survive a motion to dismiss.

[¶35] Reversed and remanded for further proceedings consistent with this opinion.