# IN THE SUPREME COURT, STATE OF WYOMING

## 2020 WY 134

OCTOBER TERM, A.D. 2020

October 19, 2020

REBECCA BEXTEL and JONATHAN BEXTEL,

Appellants
(Plaintiffs),

v.

S-19-0286

FORK ROAD LLC., a Wyoming limited liability company; ALBERT E. HANCOCK, III, and SUSAN A. HANCOCK,

Appellees
(Defendants).

*Appeal from the District Court of Teton County*
*The Honorable Timothy C. Day, Judge*

*Representing Appellant:*
   Richard R. Thomas and Vonde M. Smith, Smith LC, Jackson, Wyoming. Argument by Mr. Thomas.

*Representing Appellee Fork Road LLC:*
   Mark D. Sullivan, Mark D. Sullivan, P.C., Wilson, Wyoming.

*Representing Appellees Albert E. Hancock, III and Susan A. Hancock:*
   Curtis B. Buchhammer, Buchhammer & Ward, P.C., Cheyenne, Wyoming.

*Before DAVIS, C.J., and FOX, KAUTZ, BOOMGAARDEN, and GRAY, JJ.*

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**BOOMGAARDEN, Justice.**

[¶1]    Spouses Rebecca Bextel and Jonathan Bextel appeal the district court's dismissal of their first amended complaint (complaint) under W.R.C.P. 12(b)(6) and (c).  The complaint asserts defamation per se, tortious interference with a prospective economic advantage and business expectancy, and false light invasion of privacy claims against spouses Albert E. Hancock, III and Susan A. Hancock, and Fork Road, LLC (Fork Road).[1]  We affirm.

## *ISSUES*

[¶2]    We consolidate and restate the Bextels' seven issues as:

> I. Whether the Bextels state defamation per se claims.
>
> II. Whether the Bextels state a prima facie tort claim under Wyoming common law.
>
> III. Whether Wyoming recognizes false light invasion of privacy, as stated in the Restatement (Second) of Torts § 652E, and, if so, whether the Bextels state a false light invasion of privacy claim.

## *BACKGROUND*

### *Facts Alleged in the Complaint*

[¶3]    The standards of review for dismissal under W.R.C.P. 12(b)(6) and (c) require we accept the facts stated in the complaint as true.  *See Dockter v. Lozano*, 2020 WY 119, ¶ 6, 472 P.3d 362, 364 (Wyo. 2020); *Four B Properties, LLC v. Nature Conservancy*, 2020 WY 24, ¶ 65, 458 P.3d 832, 848 (Wyo. 2020).  We draw the following facts from the complaint.

[¶4]    The Bextels' three claims stem from a lease dispute involving a commercial building in Jackson, Wyoming (the Building).  In 2011, Knobloch Group B, LLC (Knobloch Group) owned the Building.  Its principal, Carl Knobloch, formed MBC to sublease office suites and provide the public business services in the Building.  Mr. Knobloch hired Ms. Bextel to manage MBC's day-to-day business.  She did so until 2016, when the Bextels bought MBC and entered into a five-year lease with Knobloch Group for office space in the Building.  MBC continued subleasing office space to subtenants.

[¶5]    The Building changed ownership twice over the next two years.  In April 2017, Knobloch Group sold the Building to JAMD, LLC (JAMD) and assigned JAMD the MBC lease.  Around January 2018, JAMD agreed to sell the Building to the Hancocks.  The

---

[1] Mr. Hancock is a member and the manager of Fork Road.  We refer to the Appellees collectively as the Hancocks.

1

Hancocks told the Bextels they had no desire to be landlords and there would be no changes. But the Hancocks actually believed the Bextels were making too much money through MBC. Accordingly, the Hancocks conspired with others to usurp MBC's business and destroy the Bextels' prospective economic advantage in MBC. With JAMD's help, the Hancocks fabricated a lease breach and Fork Road filed a groundless claim for forcible entry and detainer in circuit court.

[¶6]   Two events central to the lease dispute and this appeal occurred on April 23, 2018. First, the Hancocks entered the Building during business hours to deliver a letter to MBC's subtenants regarding the Building's change in ownership and how it would affect those subtenants. The letter stated:

FORK ROAD LLC,
a Wyoming limited liability company

. . .

April 23, 2018

RE:    Tenancy in 690 W. Broadway, Suite 200

Dear Tenants of Suite 200:

We recently purchased 690 W. Broadway, Suite 200. We are writing to formally notify you of this change in ownership and discuss how these changes affect your business. Although there has been a change in ownership, we wish to keep the disruption to your work environment as minimal as possible.

As you may know, Mountain Business Center (MBC) has historically leased Suite 200 from the owner of the 690 building. We believe each of you holds a sublease, whether formal or informal, with MBC. Once MBC's tenancy concludes, which will be before the end of this month, MBC will no longer have tenant's rights to occupy Suite 200. Without a *lease* of Suite 200, MBC will not have the right or ability to *sublease* your office space to you. However, we value each of you as tenants and would like your tenancy in our office space to continue. Therefore, we would like to enter into new lease agreements with each of you in order to provide you with assurances regarding your tenancy moving forward.

By the end of this week, we will provide each of [you] with a new six- or twelve-month lease agreement. Under these new

lease agreements, our company will be the landlord and you will be the tenants. Further, we wish to honor your existing rental payments. This new lease arrangement will streamline your tenancy without additional financial burden to you or your companies. To the extent that you have paid a security deposit to MBC, we will be seeking transfer [of] that payment from MBC to us so that you will not need to pay a new security deposit. Further, you should not plan to pay May rent to MBC. MBC has likewise been informed that they are not to collect May rents from its subtenants. We are looking forward to running professional and efficient workspace.

Please feel free to contact us with any questions regarding this letter. We can be reached at the contact information listed above.

Very Truly Yours,

*Bud Hancock*

Bud Hancock

Second, during a discussion in the main hallway of the Building Mr. Hancock became agitated and said to Ms. Bextel, "You're not being honest with me…You're lying to me, and you know it…Don't lie to me."[2] MBC's subtenants heard these statements.

### *Procedural History*

[¶7] The Bextels sued Mr. Hancock, Ms. Hancock, and Fork Road for defamation per se based on the verbal statements and letter, "tortious interference with prospective economic advantage and business expectancy" based on the Hancocks' "wrongful conduct," and false light invasion of privacy based on the letter.[3] They attached a copy of the letter to the complaint.

[¶8] The Hancocks moved to dismiss the Bextels' claims for defamation per se and tortious interference under W.R.C.P. 12(b)(6), without addressing the false light invasion of privacy claim. The court granted this motion on grounds that the defamation per se claim failed as a matter of law and the "summarily crafted" tortious interference claim was inadequately pled.

---

[2] We refer to these as "the verbal statements."

[3] Ms. Bextel initially filed a complaint for defamation per se against Mr. Hancock in May 2018 (Civil Action No. 17742). In August, the Bextels filed a separate complaint for defamation per se and tortious interference with prospective economic advantage and business expectancy against Mr. Hancock, Ms. Hancock, and Fork Road (Civil Action No. 17793). Later that month, the Bextels filed their first amended complaint and moved to consolidate the actions. The court granted the motion and consolidated the actions in November.

[¶9]   The Hancocks later moved to dismiss the Bextels' false light invasion of privacy claim. Having been filed outside the pleading period, the court considered this motion under W.R.C.P. 12(c), and decided that even if false light invasion of privacy had been recognized in Wyoming, the claim was deficient.

[¶10]   The Bextels timely appealed both dismissal orders.

## *DISCUSSION*

### I.      *The Bextels do not state claims for defamation per se.*

[¶11]   We review the district court's order dismissing the defamation per se claims under W.R.C.P. 12(b)(6) de novo, employing the same standards and examining the same materials as the district court. *Dockter*, ¶ 6, 472 P.3d at 364 (citing *Craft v. State ex rel. Wyoming Dept. of Health*, 2020 WY 70, ¶ 9, 465 P.3d 395, 399 (Wyo. 2020)).  We accept the facts alleged in the complaint as true and view them in the light most favorable to the Bextels, as the non-moving parties. *Id.* (citing *Craft*, ¶ 9, 465 P.3d at 399).  Dismissal is appropriate if it is certain from the face of the complaint that the Bextels cannot assert any fact that would entitle them to relief. *Id.* (citing *Craft*, ¶ 9, 465 P.3d at 399).  Dismissal of the Bextels' defamation per se claims is appropriate here.

[¶12]   "A defamatory communication is one which tends to hold the plaintiff up to hatred, contempt, ridicule or scorn or which causes him to be shunned or avoided; one that tends to injure his reputation as to diminish the esteem, respect, goodwill or confidence in which he is held." *Hill v. Stubson*, 2018 WY 70, ¶ 25, 420 P.3d 732, 741 (Wyo. 2018) (quoting *Hoblyn v. Johnson*, 2002 WY 152, ¶ 41, 55 P.3d 1219, 1233 (Wyo. 2002)).  "Defamation per se means a statement which is defamatory on its face and, therefore, actionable without proof of special damages." *Id.* (quoting *Thomas v. Sumner*, 2015 WY 7, ¶ 49, 341 P.3d 390, 402 (Wyo. 2015)).  The "statements classified as defamatory per se or damaging on their face, and which therefore do not require proof of special harm, [include] those which impute . . . a matter incompatible with business, trade, profession, or office[.]" *Id.* (quoting *Thomas*, ¶ 49, 341 P.3d at 402).

[¶13]   Our defamation per se law derives from the Restatement (Second) of Torts. *Id.* ¶ 28, 420 P.3d at 742 (citations omitted).  Under the Restatement, statements alleged to impute a matter incompatible with business, trade, profession, or office "must affect the plaintiff in some way that is peculiarly harmful to one engaged in his trade or profession."  Restatement (Second) of Torts § 573, cmt. e (1977).  "Disparagement of a general character, equally discreditable to all persons, is not enough unless the particular quality disparaged is of such a character that it is peculiarly valuable in the plaintiff's business or profession." *Id.*

[¶14]   The Bextels allege the verbal statements and the letter each imputed a matter incompatible with business, trade, profession, or office:

4

# COUNT ONE
## (Defamation *Per Se*)

. . . .

### The Hancocks' April 23, 2018, Verbal Statements

40.     As alleged herein, in a public place, Mr. Hancock made and published the following verbal, audible statements about Rebecca Bextel: "You're not being honest with me…You're lying to me, and you know it...Don't lie to me."

41.     Ms. Hancock consented to, ratified, and adopted the foregoing statements and is liable for them.

42.     Given the time and place of their statements, the Hancocks knew, or should have reasonably expected, that third persons, including MBC's subtenants, would hear their statements about Rebecca Bextel.

43.     Third persons, including one or more of MBC's subtenants, heard the Hancocks make the foregoing statements about Rebecca Bextel.

44.     The Hancocks' statements about Rebecca Bextel plainly and unequivocally accused Rebecca Bextel of dishonesty in her business affairs.

45.     The Hancocks' statements about Rebecca Bextel were and are false.

46.     The Hancocks knew the statements about Rebecca Bextel were false, or acted in reckless disregard for their truth or falsity.

. . . .

### The April 23, 2018, Letter

49.     As alleged herein, the Hancocks acted in concert to write and distribute the April 23, 2018, letter to MBC's subtenants.

50.     As alleged herein, in the April 23, 2018, letter, the Hancocks and Fork Road made false statements that the

5

subtenants receiving it would and did reasonably understand to also be about the Bextels, in particular Rebecca Bextel.

51.     The Hancocks and Fork Road knew the false statements in the letter were false, or acted in reckless disregard for their truth or falsity.

52.     The subtenants of MBC receiving the April 23, 2018, letter would and did reasonably understand that the foregoing false statements impugned the business acumen and ability of the Bextels, in particular Rebecca Bextel, in their trade and business at the time and were and are defamatory *per se*.

53.     As a direct and proximate result of Defendants' defamatory statements and the defamatory April 23, 2018, letter, the Bextels are entitled to presumed damages and [have] otherwise been damaged.

[¶15]  Mr. Bextel cannot assert a defamation per se claim because the verbal statements and the letter nowhere reference him. *See Hill*, ¶ 25, 420 P.3d at 741; Restatement (Second) of Torts § 564 ("A defamatory communication is made concerning the person to whom its recipient correctly, or mistakenly but reasonably, understands that it was intended to refer."); 50 Am. Jur. 2d *Libel and Slander* § 29 (Aug. 2020 update) ("The requirement that allegedly false statements be of and concerning or specifically reference the plaintiff, as an element of defamation, limits the right of action for injurious falsehood, granting it to those who are the direct object of criticism[.]").

[¶16] Ms. Bextel's claim based on the verbal statements are similar to and even less disparaging than statements held inadequate to constitute defamation per se in *Wilder v. Cody Country Chamber of Commerce*, 868 P.2d 211 (Wyo. 1994). There a Cody Country Chamber of Commerce official and a Chamber employee told a security guard at a travel industry conference not to admit Mr. Wilder because he was no longer a Chamber employee and might "steal" their work. *Id.* at 224. The Chamber employee told the guard Mr. Wilder was "sneaky," "lazy," "good-for-nothing," and a "son-of-a-bitch." *Id.* The Chamber official told the guard Mr. Wilder "got fired" and should not be admitted. *Id.* We acknowledged that the tenor of the language was disparaging and offensive, but concluded that the disparaging words were not actionable as defamation per se because they did not "affect the plaintiff in some way that is peculiarly harmful to one engaged in his trade or profession." *Id.* (quoting Restatement (Second) of Torts § 573 at 194, cmt. e. (1977)); *see also Hoblyn*, ¶¶ 41–43, 55 P.3d at 1232–33 (affirming dismissal of the parents' defamation claim because their neighbor's statement that they were "not nice people," though disparaging and offensive, did not fall into any of the per se categories and the record contained no prima facie showing of damages).

6

[¶17]   We reach the same conclusion here.  Mr. Hancock's statements—"You're not being honest with me…You're lying to me, and you know it…Don't lie to me"—at most constitute statements of general disparagement.  They are not actionable as defamation per se.  *See Wilder*, 868 P.2d at 224; *Hoblyn*, ¶¶ 41–43, 55 P.3d at 1232–33.  The cases the Bextels rely on are distinguishable and, being from other jurisdictions, do not control.  Each clearly involved statements that more directly impugned the plaintiffs' honesty and integrity.  *See McNamee v. Clemens*, 762 F. Supp. 2d 584, 589–92, 599–602 (E.D.N.Y. 2011) (defendant, "one of the most prominent pitchers in baseball history," accused plaintiff, defendant's former trainer, of lying to the public and the Government about defendant's steroid use); *Leal v. Holtvogt*, 123 Ohio App. 3d 51, 59–60, 81–82, 702 N.E.2d 1246, 1251–52, 1266 (Ohio App. 1998) (dissatisfied with a partnership for joint ownership of a horse, defendant began making disparaging remarks about plaintiff's honesty and integrity to past and present customers of his horse barn).  Conversely, Mr. Hancock's statements vaguely accused Ms. Bextel of lying about some unidentified matter.

[¶18]   Ms. Bextel's claim based on the letter fails as well.  The letter nowhere mentions her and, even if it did, it does not contain a statement that could "affect [her] in some way that is peculiarly harmful to one engaged in [her] trade or profession."  *See Hill*, ¶ 28, 420 P.3d at 742; Restatement (Second) of Torts § 564; 50 Am. Jur. 2d *Libel and Slander* § 29; *Wilder*, 868 P.2d at 224.  It is a business letter about the Building's change in ownership, leases, rent, and security deposits.  The language it contains, whether viewed in isolation or together with the surrounding circumstances alleged in the complaint, does not rise even to the level of general disparagement.  *Cf. Wilder*, 868 P.2d at 224; *Hoblyn*, ¶¶ 41–43, 55 P.3d at 1232–33.

## II.    *The Bextels cannot recast their second cause of action as a claim for prima facie tort.*

[¶19]   The Bextels do not challenge the district court's determination that they failed to adequately plead tortious interference in their second cause of action.  Instead—notwithstanding that they entitled their second cause of action "Tortious Interference With Prospective Economic Advantage and Business Expectancy"—the Bextels insist they actually alleged and adequately pled a prima facie tort.  We conclude that the Bextels cannot circumvent the pleading requirements for tortious interference by recasting their second cause of action as a prima facie tort.

[¶20]   The Bextels' complaint purports to assert a claim for tortious interference.  Count two is entitled "Tortious Interference" and the allegations mirror the elements of that tort[4]:

---

[4] The elements for tortious interference with a contract or prospective economic advantage are well established in Wyoming.  *Gore v. Sherard*, 2002 WY 114, ¶ 13, 50 P.3d 705, 710 (Wyo. 2002). The plaintiff must demonstrate "(1) The existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferer; (3) intentional and improper interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted."  *Id.* (quoting *Fremont Homes, Inc. v. Elmer*, 974 P.2d 952, 955 n.1 (Wyo. 1999)).

## COUNT TWO
### (Tortious Interference With Prospective Economic Advantage and Business Expectancy)

. . . .

57.	Plaintiffs, individually and collectively, **had a reasonably and sufficiently certain prospective economic advantage and business expectancy** in their respective membership interests in MBC.

58.	At all material times, **Defendants we[re] aware of Plaintiffs' prospective economic advantage and business expectancy** in their respective membership interests in MBC.

59.	As alleged herein, **Defendant engaged in independently wrongful conduct.**

60.	By means of their independently wrongful conduct, **Defendants intended to interfere with and damage Plaintiffs' prospective economic advantage and business expectancy** in their respective membership interests in MBC.

61.	By means of their independently wrongful conduct, **Defendants interfered with and damaged Plaintiffs' prospective economic advantage and business expectancy** in their respective membership interests in MBC.

62.	**As a direct and proximate result of Defendants' intentional and tortious interference with Plaintiffs' prospective economic advantage and business expectancy** in their respective membership interests in MBC, **Plaintiffs have been damaged**.

(Emphasis added.)

[¶21]	That the Bextels pled count two in this manner is not surprising as our precedent regarding prima facie tort is limited.[5] And, to the extent we might consider the availability of

---

[5] In *Townsend v. Living Centers Rocky Mountain, Inc.*, we held that Wyoming does not recognize prima facie tort as a cause of action for employment terminations. 947 P.2d 1297, 1299 (Wyo. 1997). In *Erickson v. Hudson*, we relied in part on prima facie tort principles to uphold the trial court's order that the defendants reduce the height of their fence in an appeal involving a dispute between neighbors. *See* 70 Wyo. 317, 333–42, 249 P.2d 523, 528–32 (Wyo. 1952). We have otherwise mentioned prima facie tort, but not discussed it in much detail. *See Inter-Mountain Threading, Inc. v. Baker Hughes Tubular Servs., Inc.*, 812 P.2d 555, 558

a prima facie tort, such claim is disfavored and would be viable only where no established tort claim is available. *See* 86 C.J.S. *Torts* § 8 (June 2020 update) (footnotes omitted) ("The doctrine of prima facie tort is applicable only when the factual basis of the complaint does not fall within the parameters of an established tort. It is not a duplicative remedy for claims that can be sounded in other traditionally recognized tort theories, or a catchall remedy of last resort for claims that are not otherwise salvageable under traditional causes of action."); 74 Am. Jur. 2d *Torts* § 47 (footnotes omitted) (Aug. 2020 update) ("A claim alleging a prima facie tort is disfavored, particularly when a party has another remedy or other potentially submissible tort claims available. Indeed, some authority holds that the doctrine of prima facie tort is a tort of last resort and that a prima facie tort cause of action may lie only if no other tort is available.").

[¶22] Accordingly, it is generally accepted that prima facie tort cannot be used to circumvent the pleading requirements for an established tort. *See, e.g.*, *Nazeri v. Missouri Valley Coll.*, 860 S.W.2d 303, 315–16 (Mo. 1993) (en banc); *Beaudry v. Farmers Ins. Exch.*, 412 P.3d 1100, 1104 (N.M. 2018); *Freihofer v. Hearst Corp.*, 65 N.Y.2d 135, 143, 480 N.E.2d 349, 355 (N.Y. 1985); *see also* Dan B. Dobbs, Paul T. Hayden and Ellen M. Bublick, The Law of Torts § 643 (2d ed.) (June 2020 update) (footnotes omitted) (identifying Missouri, New Mexico, and New York as the states with "[t]he only significant jurisprudence on the prima facie tort"). Because the Bextels cannot recast a well-recognized tortious interference claim as a claim for prima facie tort we will uphold the district court's unchallenged ruling that the Bextels failed to adequately plead their second cause of action.

### III. *Because the Bextels do not state a claim for false light invasion of privacy, this is not the case to consider whether Wyoming should recognize that tort.*

[¶23] We review the district court's W.R.C.P. 12(c) dismissal de novo, applying the same standards as the district court. *Ecosystem Res., L.C. v. Broadbent Land & Res., LLC*, 2007 WY 87, ¶ 8, 158 P.3d 685, 687 (Wyo. 2007). We treat the allegations in the complaint as true and view them in the light most favorable to the Bextels because they are the nonmoving parties. *Id.* However, the Hancocks are "entitled to judgment on the pleadings if the undisputed facts appearing in the pleadings . . . establish that no relief can be granted." *Four B Properties, LLC*, ¶ 65, 458 P.3d at 848 (citation omitted).

---

(Wyo. 1991) (mentioning that plaintiffs dropped various claims, including one for prima facie tort, by the time the case was submitted to the jury for deliberation); *Lawrence v. Farm Credit Sys. Capital Corp.*, 761 P.2d 640, 657, 657 n.2 (Wyo. 1988) (J. Urbigkit, concurring, in part, and dissenting, in part) (addressing prima facie tort principles and noting "[a]ppellants, in counterclaim, rather clearly pleaded a tort claim cause of action within the emergency perspective of the prima facie tort."); *see also* 162 Am. Jur. Proof of Facts 3d 509 § 2 (Sept. 2020 update) (footnote omitted) ("Wyoming has affirmatively rejected prima facie tort in at-will employment cases; however, no Wyoming cases seem to address the existence of the tort in other circumstances.").

[¶24]  The Bextels ask us to recognize a common law cause of action for false light invasion of privacy tort, as defined by the Restatement (Second) of Torts § 652E.  We decline their request because their complaint fails to state a false light invasion of privacy claim.

[¶25]  The Restatement (Second) of Torts defines this controversial tort as follows:

> One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if
>
> (a) the false light in which the other was placed would be highly offensive to a reasonable person, and
>
> (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

Restatement (Second) of Torts § 652E.[6]

[¶26]  The comments provide more detail.  The applicable "publicity" requirements, for example, are discussed in § 652D.  *Id.* at cmt. a.  The matter must not be true, but it does not have to be defamatory.  *Id.* at cmt. a–b.  If the matter is defamatory, the plaintiff can have but one recovery.  *Id.* at cmt. b.  The matter must constitute "such a major misrepresentation of [the plaintiff's] character, history, activities or beliefs that serious offense may reasonably be expected to be taken by a reasonable [person in the plaintiff's] position[.]"  *Id.* at cmt. c.  In addition, as set forth in § 652I, a corporation, partnership or unincorporated association has no cause of action for false light invasion of privacy because it has no personal privacy right.  Restatement (Second) of Torts § 652I, cmt. c.

[¶27]  The Bextels allege false light invasion of privacy based on the letter:

**COUNT THREE**
**(Common Law False Light Invasion of Privacy)**

. . . .

66.    By writing and distributing the April 23, 2018, letter as alleged herein, Defendants knowingly placed the Bextels, in particular Rebecca Bextel, before the public in a false light.

---

[6] Because it substantially overlaps with defamation, is difficult to quantify, and could have a chilling effect on speech, "courts and legal scholars heartily debate whether false light invasion of privacy deserves a place among the recognized torts."  *Denver Pub. Co. v. Bueno*, 54 P.3d 893, 898 (Colo. 2002) (en banc) (collecting decisions and secondary sources recognizing and addressing the controversy).

10

67.    The false light in which Defendants knowingly placed the Bextels would be and was highly offensive to a reasonable person.

68.    Defendants had knowledge of or acted in reckless disregard as to the falsity of the April 23, 2018, letter and as to the false light in which the Bextels would be placed.

69.    Defendants' conduct constitutes a tortious invasion of the Bextels' privacy, in violation of Wyoming common law.

70.    As a direct and proximate result of Defendants' tortious invasion of privacy, the Bextels have been damaged.

Their claim fails for two reasons.

[¶28]  First, the letter does not concern either of the Bextels.  The letter mentions MBC, a business entity that cannot assert a false light claim.  Restatement (Second) of Torts § 652I, cmt. c.  The Bextels try to circumvent this problem by alleging that because they were the only MBC representatives the subtenants knew, "the subtenants who received the letter would have reasonably understood, and in fact reasonably understood," that the letter referred to MBC and the Bextels, particularly Ms. Bextel.  Allowing these allegations, under these circumstances, to transform the business letter about MBC into a statement implicating either of the Bextel's individual privacy rights would render meaningless the rule that corporations, partnerships, and unincorporated associations have no cause of action for false light invasion of privacy.  *Id.*  Courts in other jurisdictions have affirmed dismissal under similar circumstances.  *See Straub v. Scarpa*, 967 So.2d 437, 438–39 (Fla. Dist. Ct. App. 2007) (affirming dismissal of complaint because, in relevant part, Appellee's letter to the homeowners association soliciting members to provide her with proxy rights to vote for directors in the upcoming election did not place Appellant, who was on the board of directors, in a false light as it did not mention his name or describe him); *Seaton v. TripAdvisor LLC*, 728 F.3d 592, 594, 601 (6th Cir. 2013) (affirming dismissal of Plaintiff-Appellant's false light claim under federal pleading standards where Trip Advisor's "2011 Dirtiest Hotels" list named his hotel but not him personally).

[¶29]  Second, the publicity is not of the kind that would be "highly offensive to a reasonable person."  Restatement (Second) of Torts § 652E, cmt. c.  The Bextels emphasize the letter's statement that "[w]ithout a *lease* of Suite 200, MBC will not have the right or ability to *sublease* your office space to you."  Yet neither this statement nor the letter read as a whole explain, much less allude to, the reason MBC will no longer have a lease.  However acrimonious the underlying lease dispute, the letter, whether viewed in isolation or together with the surrounding circumstances alleged in the complaint, does not constitute "such a major misrepresentation of [Ms. Bextel's or Mr. Bextel's] character, history, activities or beliefs that serious offense may reasonably be expected to be taken by a reasonable [person] in [Ms. Bextel's or Mr. Bextel's] position[.]"  *Id.*

11

## *CONCLUSION*

[¶30]  The Bextels fail to state a claim for defamation per se.  They cannot circumvent the pleading requirements for tortious interference with a contract or prospective economic advantage by recasting their second cause of action as a claim for prima facie tort.  This is not the case to consider whether Wyoming recognizes false light invasion of privacy as set forth in the Restatement (Second) of Torts § 652E because the Bextels' complaint fails to state that claim.  We therefore affirm the district court's orders dismissing the Bextels' claims.