# IN THE SUPREME COURT, STATE OF WYOMING

## 2026 WY 21

OCTOBER TERM, A.D. 2025

February 17, 2026

JOHN A. McCALL, JR.,

Appellant
(Plaintiff),

v.

BEST OF THE WEST PRODUCTIONS,
LLC, a Wyoming limited liability company;
HUSKEMAW OPTICS, LLC, a Wyoming
limited liability company; JACK PETERSON,
individually and as manager of Best of the
West Productions, LLC; and BOTW
HOLDINGS, LLC, a Wyoming limited
liability company,

Appellees
(Defendants).

S-25-0147

*Appeal from the District Court of Park County*
*The Honorable Bill Simpson, Judge*

*Representing Appellant:*
　　Robert J. Walker and John M. Walker, Walker Law LLP, Cheyenne, Wyoming.
　　Argument by Mr. Robert Walker.

*Representing Best of the West Productions, LLC; Huskemaw Optics, LLC; and BOTW*
*Holdings, LLC:*
　　Bradley T. Hunsicker and Jennifer Salisbury, Markus Williams Young & Husicker,
　　LLC, Cheyenne, Wyoming.  Argument by Ms. Salisbury.

*Representing Jack Peterson:*
> Thomas P. Keegan, Keegan & Krisjansons, P.C., Cody, Wyoming. Argument by Mr. Keegan.

*Before BOOMGAARDEN, C.J., and GRAY, FENN, JAROSH, and HILL, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**HILL, Justice.**

[¶1]   After a jury awarded John A. McCall Jr. $1,784,640 in damages for his conversion claim and $75,000 in damages for his defamation per se claim, defendants Huskemaw Optics, LLC (Huskemaw), Best of the West Productions, LLC (Best of the West), and Jack Peterson filed post-judgment motions challenging the damages. The district court partially granted the defendants' post-judgment motions, reducing the damages for Mr. McCall's conversion claim to $293,017 and the damages for his defamation per se claim to $500. Mr. McCall timely appealed the granting of those post-judgment motions. We reverse.

## ISSUE

[¶2]   We rephrase the dispositive issue as:

Did the district court err when it reduced the damages awarded by the jury?

## FACTS

[¶3]   Mr. McCall was a member of both Huskemaw and Best of the West. A dispute arose between Mr. McCall and the other LLC members about how the two LLCs were being operated. Mr. McCall initiated litigation against the two LLCs seeking dissolution, declaratory judgment, and injunctive relief. About a month later, Mr. McCall was expelled as a member of both Huskemaw and Best of the West. Although the LLCs' operating agreement required that an expelled member be immediately compensated for his LLC membership interests, Mr. McCall was not immediately paid for those membership interests.[1]

[¶4]   Mr. McCall's combined membership in the limited liability companies was 41.25 units, amounting to approximately a 33% interest, which were to be held for his benefit by the companies following his expulsion. While the case was proceeding, the district court entered an order enjoining Huskemaw and Best of the West from doing anything to harm or decrease Mr. McCall's interests in the LLCs. The court also appointed a special master to value Mr. McCall's membership interests.

[¶5]   Without his knowledge, and in violation of the district court's injunction, Mr. McCall's membership interests were assigned and sold to a third party, BOTW Holdings, LLC. The district court then allowed Mr. McCall to amend his complaint to add a claim of conversion against Huskemaw and Best of the West for conversion of his membership interests. Mr. McCall's amended complaint also included claims against Mr. Peterson, managing member and president of both Huskemaw and Best of the West, for defamation.

---

[1] Contrary to both Mr. McCall's and the LLCs' briefs, the operating agreement was not made part of the record on appeal.

1

[¶6]     The litigation included several other issues and counter and cross claims not relevant to the issues on appeal.  In relevant part, after approximately a three-week trial, the jury found in favor of Mr. McCall on several of his claims including breach of contract, breach of operating agreement, conversion, and defamation per se.  The jury awarded Mr. McCall $1,784,640 in damages and interest for his conversion claim and $75,000 in damages for his defamation claim.

[¶7]     About a week after the jury verdict, Huskemaw, Best of the West, and Mr. Peterson filed a combined renewed motion for judgment as a matter of law under Wyoming Rule of Civil Procedure (W.R.C.P.) 50(b) regarding some of Mr. McCall's claims, including the conversion and defamation claims.  Among other things, they asserted the jury could not award Mr. McCall more than the special master's determination of value on his conversion claim and that Mr. McCall did not provide sufficient evidence of his defamation damages.  The district court denied the defendants' Rule 50(b) motion.  In its ruling, the district court stated:

> [LLCs] state because the [LLCs] and [Mr. McCall] stipulated to having a special master value [Mr. McCall's] membership interest, that the special master's value could not be disputed.  [LLCs] assert that [Mr. McCall], at trial, belatedly challenged the special master's report and sought a value based on testimony other than the special master.  The parties did stipulate early in the case that a special master would value [Mr. McCall's] interests in the companies and that they would not contest that value.  However, in 2022, [Mr. McCall] learned that his membership units in the [LLCs] had been transferred to a third party.  [Mr. McCall] amended his complaint to allege a claim of conversion as a separate tort.  The [c]ourt allowed the amendment and at trial the jury found that the [LLCs] did in fact commit conversion.  The jury awarded damages on the conversion claim of $1,650,000, the damages being consistent with testimony that [Mr. McCall] owned 41.25 membership units valued at $40,000 per unit.  The damages exceeded the value placed on the units by the special master, who valued the units under the companies' operating agreement in accordance with value due a dissociated member.  [Mr. McCall] filed multiple motions in the [c]ourt addressing the conversion claim asserting their right to damages on this tort claim separate from the value placed on the units by the special master.  The [c]ourt heard pretrial motions related to the conversion claim and the [LLCs] were aware that [Mr. McCall] was asserting damages on a separate and distinct conversion claim with a value arising from that tort independent of the special master's value.
> . . .
>
> . . . .

2

. . . The [c]ourt allowed [Mr. McCall] to amend his complaint to allege conversion and the jury found that the [LLCs] had converted [Mr. McCall's] interests. [LLCs'] motion asserts that [Mr. McCall] could not be awarded damages for conversion because he is limited to the value placed on his interests by the special master. [LLCs] appear to assert that the jury awarded double recovery. The [c]ourt does not see where the jury awarded double recovery. The jury determined that [LLCs] converted [Mr. McCall's] interests and awarded damages on that count. The jury did not award damages as it concerns the value placed on his interests by the special master.

[¶8] In denying Mr. Peterson's Rule 50(b) motion as to defamation, the district court stated:

> The jury awarded [Mr. McCall] damages on his defamation per se as asserted against [Mr.] Peterson. The jury heard testimony that [Mr.] Peterson repeated statements alleging [Mr. McCall] had attempted to engage and hire or assist in engaging and hiring prostitutes and had otherwise been associated with prostitutes. The jury heard the evidence including [Mr.] Peterson's defenses and testimony regarding the claim and determined to find for [Mr. McCall]. The jury instructions advised the jury on defamation and defamation per se and the defenses to the claim. The jury found Mr. Peterson liable for defamation per se as set forth in the jury instructions. In an earlier decision letter on summary judgment in September 2022, the [c]ourt also determined that the allegations against the [Mr. McCall], if found to be true, constituted defamation per se. As such, special damages need not have been proven, as set forth in the instructions. *Hill v. Stubson*, 2018 WY 70, ¶ 25, 420 P.3d 732, 741 (Wyo. 2018).

The district court then entered judgment, incorporating the jury's verdict.

[¶9] Less than one month later, all the defendants filed a combined motion for post-judgment relief pursuant to W.R.C.P 59 and 60.[2] In its order on those motions, the district court observed in regard to the jury's conversion damage award:

> In its earlier order denying [LLCs'] post-trial renewed motion for judgment as a matter of law, the [c]ourt noted that [LLCs'] conversion claim was a tort separate from any claim for damages under the operating agreement and the value of the conversion was not tied to the value arrived at by the special master. In the end, the jury did not award damages based on the special master's report and did not award duplicate damages. The [c]ourt did not

---

[2] The defendants sought a new trial under Rule 59(a), sought to alter or amend the judgment under Rule 59(e), and sought relief from judgment under Rule 60(b).

3

fully examine the issues in that order, however, all of the issues have been raised in the motions now before the court.

The district court, unlike its previous order, now concluded the jury's verdict finding Mr. McCall had been rightfully expelled from the LLCs was inconsistent with its finding that a conversion had occurred. The district court further concluded, "With a rightful expulsion finding, the legal title to [Mr. McCall's] membership units was replaced by the operating agreement provisions that allowed him compensation for the units at their adjusted book value. The operating agreement gave him only the right to be compensated for the units rather than continued ownership of the units." Accordingly, the district court, under Rule 60(b), amended the judgment to reduce the jury's conversion damage award to the special master valuation of $293,017.57.[3]

[¶10] As to the jury's award for damages for defamation per se, the district court explained:

> Mr. Peterson argues . . . the jury should have awarded only nominal damages because [Mr. McCall] did not testify that he suffered any kind of pecuniary damage or damage to his reputation. While [Mr. McCall] testified that he was distressed by the dissemination of this information, Mr. Peterson is correct that [Mr. McCall] did not testify to any pecuniary or reputational damage.

> The Wyoming Supreme Court does not appear to have answered this specific question, whether anything other than nominal damages can be awarded in a defamation per se case when no evidence is presented regarding actual injury. Wyoming's pattern jury instructions state that a person need not prove special damages (economic) in a defamation per se case for a defendant to be held liable. The instructions do not state whether or not actual injury must be proven in order to be awarded damages. The pattern instructions also do not address whether or not reputational damages (general) must be proven to establish liability or whether proof must be presented for an award of damages. Other jurisdictions and sources are not fully aligned on whether or not, even if damages are presumed in a defamation per se case, there must be proof of actual injury before damages, other than nominal damages, may be awarded. . . .

> . . . .

---

[3] The district court did not specify which sub-section under Rule 60(b)—1 through 6—it was using; nor did it outright vacate the jury's finding of conversion.

4

. . . The Wyoming Supreme Court does not appear to have gone into any great detail in discussing presumed damages in a defamation per se case other than to note that damages in a defamation per se case, "are presumed and the claim is actionable without special damages." *Hill v. Stubson*, 2018 WY 70, ¶ 25, 420 P.3d 732, 741 (Wyo. 2018).

The district court then summarized discussions and law from other jurisdictions and sources regarding the measure of defamation per se damages.

[¶11] The district court ultimately concluded that it would grant relief under W.R.C.P. 60(b) to Mr. Peterson by reducing the jury's defamation per se damage award to nominal damages in the amount of $500. The district court granted the Rule 60(b) relief based on two findings. First, the evidence did not show Mr. Peterson knew the defamatory statements he made were false or that he acted recklessly in repeating what others had told him. Second, Mr. McCall did not provide proof of any economic loss or loss to his reputation, and the jury's award of $75,000 was not supported with any connection between the actual harm to Mr. McCall and the damages awarded.

[¶12] Mr. McCall timely appeals, challenging the district court's reduction of the jury's damage awards for his conversion and defamation per se claims.

## STANDARDS OF REVIEW

[¶13] We apply the abuse of discretion standard to our review of the district court's rulings on motions brought under W.R.C.P. 60(b). *Hale v. City of Laramie*, 2025 WY 133, ¶ 18, 580 P.3d 516, 520 (Wyo. 2025). "Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means exercising sound judgment with regard to what is right under the circumstances and without doing so arbitrarily or capriciously." *Hale*, ¶ 19, 580 P.3d at 520 (quoting *Cornell v. Mecartney*, 2025 WY 97, ¶ 15, 575 P.3d 349, 353 (Wyo. 2025)). "A court abuses its discretion if it acts 'in a manner which exceeds the bounds of reason under the circumstances.'" *Hale*, ¶ 19, 580 P.3d at 520 (quoting *Cornell*, ¶ 15, 575 P.3d at 353). "An abuse of discretion occurs when the district court could not reasonably conclude as it did." *Redland v. Kimsey*, 2025 WY 85, ¶ 28, 573 P.3d 497, 507 (Wyo. 2025) (citations omitted); *Martorano v. Mazzei*, 2025 WY 53, ¶ 17, 568 P.3d 710, 714–15 (Wyo. 2025). The appellant bears the burden of proof to show that the district court abused its discretion and was clearly wrong in granting relief under W.R.C.P. 60(b). *State, Dep't. of Fam. Servs. v. PAJ*, 934 P.2d 1257, 1260 (citing *Claassen v. Nord*, 756 P.2d 189, 193 (Wyo.1988)). An order granting relief will be reversed only if the district court was clearly wrong. *See Martorano*, ¶ 17, 568 P.3d at 715 (citations omitted).

[¶14] We review a district court's conclusions of law de novo. *Eiden Constr., LLC v. Hogan & Assocs. Builders, LLC*, 2024 WY 138, ¶ 39, 561 P.3d 304, 316 (Wyo. 2024)

(citing *Denbury Onshore, LLC v. APMTG Helium LLC*, 2020 WY 146, ¶ 25, 476 P.3d 1098, 1105 (Wyo. 2020)). To the extent that this appeal raises questions of law, those questions are reviewed de novo. *Sorum v. Sikorski*, 2024 WY 124, ¶ 12, 559 P.3d 153, 160 (Wyo. 2024) (citing *Strong Const., Inc. v. City of Torrington*, 2011 WY 82, ¶ 9, 255 P.3d 903, 907 (Wyo. 2011)).

## DISCUSSION

[¶15]  Rule 60(b) allows courts to relieve a party from the oppression of a final judgment that was unfairly or mistakenly entered. *Myers v. Myers*, 2022 WY 75, ¶ 10, 511 P.3d 470, 473–74 (Wyo. 2022) (citing *Painovich v. Painovich*, 2009 WY 116, ¶ 8, 216 P.3d 501, 504 (Wyo. 2009)) (citation modified).  The rule provides:

> (b) Grounds for Relief from a Final Judgment, Order, or Proceeding. On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
>
> > (1) mistake, inadvertence, surprise, or excusable neglect;
> >
> > (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
> >
> > (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
> >
> > (4) the judgment is void;
> >
> > (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
> >
> > (6) any other reason that justifies relief.

W.R.C.P. 60(b).

[¶16]  As noted above, the district court did not specify which subdivision of Rule 60(b) it was relying upon.  Logically, under the facts of the case, the district court could have only relied upon subdivision (b)(1) or (b)(6) to reduce Mr. McCall's damages.  Huskemaw and Best of the West assert the district court was correcting its own mistake under Rule 60(b)(1).  The mistake they assert the district court was correcting was its denial of their Rule 50(b) motions.  Certainly, the district court never specifically invoked the (b)(6)

6

catch-all provision, so for purposes of this appeal we will accept their assertion the district court reduced the damage awards under Rule 60(b)(1).

[¶17]   We have found it appropriate for a district court to correct its own mistakes under Rule 60(b)(1).  *Gunsch v. State*, 2019 WY 79, ¶ 14, 444 P.3d 1278, 1282 (Wyo. 2019).  In *Gunsch*, we endorsed the Seventh Circuit Court of Appeals' reasoning that Federal Rule of Civil Procedure 60(b)(1) "allows a district court to correct its own errors that could be corrected on appeal" where the "motion is not a device to avoid expired appellate time limits."  *Gunsch*, ¶ 15, 444 P.3d at 1282 (quoting *Mendez v. Republic Bank*, 725 F.3d 651, 659 (7th Cir. 2013)).  The Seventh Circuit further reasoned, "in the rare case where a district judge recognizes a clear legal or factual error before a pending appeal has been briefed, no purpose is served by prohibiting the district judge from remedying the error."  *Id.* (quoting *Mendez*, 725 F.3d at 660).  The United States Supreme Court has recently endorsed this view as well.  *See Kemp v. United States*, 596 U.S. 528 (2022).[4]

[¶18]   However, we are mindful that granting post judgment relief from a jury verdict may have the impact of depriving the parties of a determination of the facts by a jury.  *See Elsner v. Campbell Cnty. Hosp. Dist.*, 2025 WY 37, ¶ 30, 566 P.3d 894, 904 (Wyo. 2025) (citations omitted) (discussing a motion under W.R.C.P. 50(a)).  Thus, such motions should be granted cautiously and sparingly.  *Id.* at 904–905.  Furthermore, "a jury's determination of the amount of damages is inviolate absent an award which is so excessive or inadequate as to shock the judicial conscience and to raise an irresistible inference that passion, prejudice, or other improper cause had invaded the trial."  *Vahai v. Gertsch*, 2020 WY 7, ¶ 38, 455 P.3d 1218, 1230 (Wyo. 2020) (citations omitted) (citation modified).  Accordingly, altering a jury's award of damages must be measured.  As long as the evidence can support the jury's findings, the verdict should not be disturbed.  *Wageman v. Harrell*, 2020 WY 143, ¶ 7, 476 P.3d 657, 659 (Wyo. 2020).

**The jury's $1,784,640 conversion claim award**

[¶19]   Conversion occurs when a person treats another's property as his own, denying the true owner the benefits and rights of ownership.  *Lieberman (Lieberman IV) v. Mossbrook*, 2009 WY 65, ¶ 21, 208 P.3d 1296, 1304 (Wyo. 2009) (citing *Cross v. Berg Lumber Co.*, 7 P.3d 922, 929 (Wyo. 2000)).  To establish a conversion claim, the plaintiff must prove: (1) he had legal title to the converted property; (2) he either had possession of the property or the right to possess it at the time of the conversion; (3) the defendant exercised dominion over the property in a manner which denied the plaintiff his rights to use and enjoy the property; (4) in those cases where the defendants lawfully, or at least without fault, obtained possession of the property, the plaintiff made some demand for the property's

---

[4] Given the LLCs' multiple motions in this case, it is worth noting that Rule 60(b)(1) should not, however, be used simply as a means to try to convince the district court to reconsider its previous rulings.  Rule 60(b)(1) is not intended to be a second bite at the apple for a denied Rule 50(b) motion.

return which the defendant refused; and (5) the plaintiff has suffered damage by the loss of the property. *Lieberman IV*, ¶ 21, 208 P.3d at 1304 (citing *Cross*, 7 P.3d at 929); *see also Campbell v. Davidson*, 2023 WY 100, ¶ 33, 537 P.3d 734, 744 (Wyo. 2023).

[¶20]  The jury was correctly instructed on this law in Jury Instruction 21.07:

### 21.07. CONVERSION — ELEMENTS

The Plaintiff has alleged a claim for conversion against the defendant and the Defendant Companies have alleged a claim for conversion against Plaintiff. Conversion occurs when a person treats another's property as his own, denying the true owner the benefits and rights of ownership.  In order to establish a conversion claim, the party alleging conversion must show that:

1.   He or it had legal title to the property;

2.  He or it either had possession of the property or the right to possess it at the time of the conversion;

3.  The other party exercised dominion over the property in a manner which denied the owner rights to use and enjoy the property;

4.  in [*sic*] those cases where the party lawfully, or at least without fault, obtained possession of the property, the party alleging conversion made some demand for the property's return which the party possessing the property refused; and

5.  The party alleging conversion has suffered damage by the loss of the property.

[¶21]  The measure of damages for the conversion of personal property is the fair market value of the property at the time of loss.  *Lieberman IV*, ¶ 49, 208 P.3d at 1311 (citing *O's Gold Seed Co. v. United Agri–Products Fin. Servs., Inc.*, 761 P.2d 673, 676 (Wyo. 1988)); *see also Broyles v. Broyles*, 711 P.2d 1119, 1124 (Wyo. 1985).  In conversion cases, the equivalent of interest on the value of converted property is also recoverable as an element of damages.  *Lieberman IV*, ¶ 49, 208 P.3d at 1311 (citing *ANR Prod. Co. v. Kerr–McGee Corp.*, 893 P.2d 698, 704 (Wyo.1995)).  The jury was again correctly instructed as to damages:

### 21.08. CONVERSION — DAMAGES

The damages in an action for conversion are measured by the sum of money necessary to compensate the party alleging conversion for all actual losses or injuries sustained as a natural and proximate result of the other party's wrong. You must fix the amount of money that will reasonably and fairly compensate for the fair market value of the property at the time of its conversion[.] The value of the converted property is determined at the time and place of its conversion.

[¶22] Based upon these two jury instructions, the jury returned a verdict for Mr. McCall, finding that Huskemaw and Best of the West had converted his LLC membership interest. The jury awarded Mr. McCall $1,650,000 in damages and $134,640 in interest.

[¶23] In analyzing Huskemaw's and Best of the West's W.R.C.P. Rule 60(b) request for relief from the Judgment, the district court determined the jury's finding that a conversion occurred was inconsistent with its finding that Mr. McCall had been rightfully expelled from the LLCs. The district court reasoned that once Mr. McCall was rightfully expelled, the legal title to his membership units was replaced by the LLCs' operating agreement provisions that allowed him compensation for the units at their adjusted book value. Thus, the district court determined the operating agreement gave Mr. McCall only the right to be compensated for the units rather than continued ownership of the units. The district court then concluded that the value of the units was limited to the special master's valuation of $293,017.57.

[¶24] We disagree with the district court's reasoning and reduction of the jury's award for conversion for a couple of reasons. First, the district court found the jury's verdict to be inconsistent. Challenges to jury verdicts for being irregular, inconsistent, or otherwise irreconcilable must be raised before the jury is discharged or they will be deemed waived. *See Anesthesiology Consultants of Cheyenne, LLC v. Stevens*, 2020 WY 67, ¶ 11, 464 P.3d 584, 588 (Wyo. 2020); *Smyth v. Kaufman*, 2003 WY 52, ¶ 43, 67 P.3d 1161, 1174 (Wyo. 2003). Huskemaw and Best of the West did not challenge the verdict as being inconsistent prior to the jury being discharged; and therefore, the jury was not given an opportunity to explain any perceived inconsistency.

[¶25] But more importantly, the jury verdict is not inconsistent because Mr. McCall did not lose his property interest when he was expelled. The Wyoming Limited Liability Company Act states, "any transferable interest owned by the person immediately before dissociation in the person's capacity as a member is owned by the person solely as a transferee." Wyo. Stat. Ann. § 17-29-603 (LexisNexis 2025). A person becomes dissociated as a member from an LLC when he is expelled as a member. Wyo. Stat. Ann. § 17-29-602. Thus, when Mr. McCall was expelled from the LLCs, he became a dissociated member and transferee, but he retained the 41.25 membership units which is a

9

property interest.[5] *See also Lieberman (Lieberman I) v. Wyoming.com LLC*, 11 P.3d 353, 357 (Wyo. 2000) (discussing LLC membership interests under the previous, repealed Wyoming Limited Liability Act); and *Mgmt. Nominees, Inc. v. Skowronska*, 2019 WY 105, 450 P.3d 672 (Wyo. 2019) (discussing LLC membership, rights, and interests).

[¶26]   Mr. McCall's 41.25 membership units in Huskemaw and Best of the West were his property before he was expelled and they were his property after he was expelled.  The rights associated with Mr. McCall's property interest may have changed pre and post expulsion, but the nature of his interest remained the same—his interest was an ownership interest.  For instance, Mr. McCall may not have had the right to participate in the management of the company or vote on issues pertinent to the LLCs, but until he was paid, he retained his ownership interest.

[¶27]   Thus, the jury could find both that Mr. McCall was properly expelled from the LLCs and that his property had been converted.  Indeed, the district court had enjoined the LLCs from harming Mr. McCall's property interests in the LLCs and had ordered his membership units to be held in status quo until litigation was complete.  The LLCs did not maintain the status quo of Mr. McCall's membership interests; they sold them to a third party, BOTW Holdings, LLC.  Thus, it was appropriate for the jury to find Mr. McCall's membership units were converted on the date Huskemaw and Best of the West assigned and sold them to BOTW Holdings, LLC.

[¶28]   The jury was then instructed to assess damages for conversion at fair market value at the time and place of the conversion, which it did.  Mr. McCall's conversion claim was based in tort and was separate and distinct from his breach of contract claim.  Although the special master's valuation may have been helpful for and the measure of damages for the breach of contract claim, it did not set the value of Mr. McCall's conversion tort claim and did not limit the jury's conversion damage award. Mr. McCall's tort conversion claim and breach of contract claim had different measures of damage.  It was the jury's role to ascertain the facts, reconcile conflicts therein, and draw its own inferences if more than one inference was permissible.  *Mgmt. Nominees, Inc.*, ¶¶ 25–27, 450 P.3d at 680; *Anesthesiology Consultants of Cheyenne, LLC*, ¶ 12, 464 P.3d at 589.  It did so and determined the LLCs committed the tort of conversion and Mr. McCall was entitled to damages as of the date of the conversion.

[¶29]   The district court erred as a matter of law in concluding Mr. McCall lost his LLC membership property upon being expelled as a member of Huskemaw and Best of the West.  Therefore, the district court abused its discretion when it reduced the jury's conversion damage award under Rule 60(b).  The district court did not make a mistake when it denied the LLCs Rule 50(b) motions and therefore there was no mistake to correct

---

[5] Because the operating agreement was not made part of the record on appeal, we are unable to review its provisions regarding expulsion.

under Rule 60(b)(1). As such, the district court abused its discretion when it partially granted the LLCs' motion. We reverse.

**The jury's $75,000 defamation per se claim award**

[¶30] The jury found Mr. McCall had proven his defamation per se claim against Mr. Peterson and awarded Mr. McCall $75,000 as damages. When partially granting Mr. Peterson's Rule 60 motion, the district court did not grant Mr. Peterson relief from the judgment finding him liable for defamation per se. The only relief the district court granted Mr. Peterson under W.R.C.P. Rule 60(b) was a reduction of the jury's damage award from $75,000 to $500. Thus, the only issue before us is whether the district court was correct in concluding the jury's award of damages for Mr. McCall's defamation per se claim was unsupported by the evidence.

[¶31] We begin by noting that although we have not had many occasions to discuss defamation per se damage awards, we have never held that the damages are limited to nominal damages. We have, however, said that "[d]efamation per se differs in that damages are presumed and the claim is actionable without special damages." *Hill v. Stubson*, 2018 WY 70, ¶ 25, 420 P.3d 732, 741 (Wyo. 2018); *see also Lewis v. Francis*, 2025 WY 109, ¶¶ 14–15, 577 P.3d 433, 437 (Wyo. 2025). We have defined special damages as the "loss of something having economic or pecuniary value." *Hill*, ¶ 25, 420 P.3d at 741. Thus, "[a] defamation per se claim does not require proof of pecuniary or economic loss." *Lewis*, ¶ 15, 577 P.3d at 437 (citing *Thomas v. Sumner*, 2015 WY 7, ¶ 49, 341 P.3d 390, 402 (Wyo. 2015)). Jury Instruction 18.05, "DEFMATION PER SE," correctly instructed the jury on this law, stating, "[i]f a statement is defamatory per se, the plaintiff does not need to prove special damages or special harm for the defendant to be held liable."

[¶32] Defamation per se damages are presumed because a defamatory statement, by definition, tends to injure the plaintiff's reputation; tends to diminish the esteem, respect, goodwill or confidence in which he is held; and tends to hold him up to hatred, contempt, ridicule or scorn or causes him to be shunned or avoided. *See Lewis*, ¶ 14, 577 P.3d at 437 (quoting *Bextel v. Fork Rd. LLC*, 2020 WY 134, ¶ 12, 474 P.3d 625, 629 (Wyo. 2020)). Because Wyoming's defamation per se law derives from the Restatement (Second) of Torts, it is instructive to consider the restatement. *Lewis*, ¶ 16, 577 P.3d at 437 (citing *Bextel*, ¶ 13, 474 P.3d at 629). Comment *a* to § 621 provides that in defamation actions general damages are imposed for the purpose of compensating the plaintiff for the harm that the publication has caused to his reputation. Restatement (Second) of Torts § 621 Comment *a* (1977) (Westlaw September 2025 Update). Comment *a* further states:

> At common law general damages have traditionally been awarded not only for harm to reputation that is proved to have occurred, but also, in the absence of this proof, for harm to reputation that would normally be assumed to flow

11

from a defamatory publication of the nature involved. This presumption of general damage to reputation from a defamatory publication that is actionable per se affords little control by the court over the jury in assessing the amount of damages.

*Id.* Comment *a* also provides that "[i]f special harm is shown, damages for it may also be recovered. (See § 622). Recovery may also be had for emotional distress and resulting bodily harm. (See § 623)." *Id.* Section 620 provides, "[o]ne who is liable for a slander actionable per se or for a libel is liable for at *least* nominal damages." The Restatement (Second) of Torts § 620 (1977) (Westlaw September 2025 Update) (emphasis added). Similarly, in *Law of Defamation* § 9:17, the author states that presumed damages "are by no means merely nominal," and "may at times be quite substantial." 2 Rodney A. Smolia, *Law of Defamation* § 9:17 Presumed damages—Function and rationale (2d ed.) (Westlaw October 2025 update) (observing that the United States Court of Appeals for the Seventh Circuit approved a presumed damages award of $1 million, reducing the district court's allowance of $3.36 million in presumed damages).

[¶33] The United States Supreme Court has described "general damages" as covering "loss of reputation, shame, mortification, injury to the feelings and the like and need not be alleged in detail and require no proof." *F.A.A. v. Cooper*, 566 U.S. 284, 295–96 (2012) (citations omitted). General damages are awarded for noneconomic harm, such as the embarrassment, humiliation, or loss of respect caused by the defamatory publication. *Innovative Block of S. Texas, Ltd. v. Valley Builders Supply, Inc.*, 603 S.W.3d 409, 418 (Tex. 2020) (citation omitted). The existence of special harm or special damage, such as the loss of a job or business opportunity, may also indicate and substantiate the existence of reputational harm. *Id.* at 425–26 (citations omitted). We have stated that general damages are those which naturally and necessarily flow from the wrongful act; they are implied by law and are the natural consequences of the wrongful act. *Cross v. Berg Lumber Co.*, 7 P.3d 922, 932 (Wyo. 2000) (citing *Henderson v. Coleman*, 19 Wyo. 183, 115 P. 439, 448 (1911)).

[¶34] From the foregoing analysis, we hold that a trier of fact may award more than a nominal amount as defamation per se damages. Like other damage award matters, it is for the trier of fact—the jury in the case before us—to determine. As recognized by the Washington Supreme Court, "[t]here is no exact measure of general damages which can be applied in either a libel or slander action. It is within the special province of the jury to determine the amount." *Getchell v. Auto Bar Sys. Nw., Inc.*, 73 Wash. 2d 831, 838, 440 P.2d 843, 848 (Wash. 1968) (citation omitted). Similarly, we have also stated where there cannot be a fixed standard for determining the amount of damages, triers of fact must of necessity be given broad discretion in deciding what award is fair and just. *Landmark, Inc. v. Stockmen's Bank & Tr. Co.*, 680 P.2d 471, 475–76 (Wyo. 1984) (quoting *Chittim v. Armco Steel Corp.*, 407 P.2d 1015, 1018 (Wyo. 1965)). If noneconomic damages like reputational damages are not amenable to exact calculation and cannot be determined with

mathematical precision, factfinders are granted latitude in awarding such damages. *Amell v. Van Pelt*, No. 14-24-00297-CV, 2025 WL 3275373, at \*5, \*11 (Tex. App. Nov. 25, 2025). But such damages are not immune from no-evidence review on appeal—loss of reputation damages should be more than theoretical. *Id.* (citing *Brady v. Klentzman*, 515 S.W.3d 878, 887 (Tex. 2017)).

[¶35] We now turn to the jury's damage award in this case. When we review the sufficiency of the evidence to support a jury's verdict, we assume the evidence in favor of the successful party is true, leave out consideration of conflicting evidence, and afford the successful party every favorable inference that may reasonably and fairly be drawn from it. *JTL Grp., Inc. v. Gray-Dockham*, 2022 WY 67, ¶ 38, 510 P.3d 1060, 1070 (Wyo. 2022) (citing *Mgmt. Nominees, Inc.*, ¶ 21, 450 P.3d at 678). Damages are findings of ultimate fact. *Alexander v. Meduna*, 2002 WY 83, ¶ 35, 47 P.3d 206, 217 (Wyo. 2002). The award of "damages in civil cases is a fact-finder's function." *Osterhout v. Bd. of Cnty. Comm'rs of LeFlore Cnty., Oklahoma*, 10 F.4th 978, 996 (10th Cir. 2021) (quoting *Bennett v. Longacre*, 774 F.2d 1024, 1028 (10th Cir. 1985)). Damages "must be proven with a reasonable degree of certainty, but proof of exact damages is not required." *Holloway v. Hidden Creek Outfitters, LLC*, 2025 WY 59, ¶ 18, 569 P.3d 756, 760 (Wyo. 2025) (citing *Robinson v. Black*, 2025 WY 25, ¶ 20, 564 P.3d 1030, 1037 (Wyo. 2025)).

[¶36] A court may not substitute its own judgment for the collective judgment of the jurors. *Dewey v. Wentland*, 2002 WY 2, ¶ 54, 38 P.3d 402, 421–22 (Wyo. 2002) (citing *Archuleta v. Valencia*, 871 P.2d 198, 202 (Wyo. 1994)). A trier of fact's determination of the amount of damages is within its sound discretion and is inviolate absent an award which is so excessive or inadequate as to shock the judicial conscience and to raise an irresistible inference that passion, prejudice, or other improper cause has invaded the trial. *Vahai v. Gertsch*, 2020 WY 7, ¶ 38, 455 P.3d 1218, 1230 (Wyo. 2020) (citation omitted); *Kerbs v. Walck*, 2010 WY 53, ¶ 42, 229 P.3d 974, 983 (Wyo. 2010) (citation omitted). Moreover, in cases where the law provides no specific measure for quantifying damages, the amount to be awarded rests almost totally within the discretion of the jury, and courts, both trial and appellate, are even more "reluctant to interfere with that decision unless by its excessiveness or inadequacy the award carries with it an implication of passion, prejudice or bias or the result of some erroneous basis." *Union Pac. R. Co. v. Richards*, 702 P.2d 1272, 1278 (Wyo. 1985) (quoting *Town of Jackson v. Shaw*, 569 P.2d 1246, 1251–52 (1977)).

[¶37] Mr. Peterson certainly challenged much of the evidence and offered a different interpretation of the facts related to Mr. McCall's defamation claims. But it was the jury's role to ascertain the facts, reconcile conflicts therein, and draw its own inferences if more than one inference was permissible. *Anesthesiology Consultants of Cheyenne, LLC*, ¶ 12, 464 P.3d at 589; *Mgmt. Nominees, Inc.*, ¶ 27, 450 P.3d at 680. Assuming, as we must, Mr. McCall's evidence is true, *JTL Grp., Inc.*, ¶ 38, 510 P.3d at 1070, and giving Mr. McCall the benefit of every favorable inference that can reasonably and fairly be drawn from it,

the record supports that the jury used sound judgment in determining the amount for the defamation per se damages.

[¶38] The jury heard approximately three weeks of trial testimony and evidence. The jury heard undisputed evidence Mr. Peterson told other LLC members, including Teresa Currier, that Mr. McCall had attempted to engage and hire or assist in engaging or hiring prostitutes and had otherwise been associated with prostitutes. The jury heard evidence Mr. McCall was a well-respected doctor and could infer he was well-respected and otherwise had an unreproachable reputation with all the LLCs' members before Mr. Peterson uttered the defamatory remarks. The jury could infer that after the defamatory remarks were made, Mr. McCall's reputation with the LLCs' members was diminished. The jury could also infer Mr. McCall was worried about his professional reputation as such defamatory remarks could adversely affect his fitness to act within the medical profession, and heard testimony that he could lose his license if such statements were true.

[¶39] The jury heard testimony Mr. McCall and Teresa Currier had a very close relationship, but after Mr. Peterson made the defamatory remarks to her, the relationship changed. The jury heard testimony that prior to Mr. Peterson telling her the defamatory statements, Mr. McCall and Ms. Currier texted each other several times a week. However, there came a time when Mr. McCall texted her, got no response, texted her again a few days later and received no response, and then two weeks went by with no response. When she did finally reply to Mr. McCall, she asked him outright if he had been hiring "hookers." The jury heard testimony that Mr. Peterson sat down in front of Ms. Currier and told her that Mr. McCall had been hiring prostitutes. The jury could infer that Mr. McCall was humiliated, mortified, embarrassed and full of anguish over the statements and their impact. Mere evidence (including the plaintiff's testimony alone) of personal humiliation or anguish may suffice as actual harm. 2 Rodney A. Smolia, *Law of Defamation* § 7:4. Special Harm, Actual Harm, and Presumed Harm—Presumed harm (2d ed.) (Westlaw October 2025 update).

[¶40] The jury heard how important Mr. McCall's reputation was to him. Mr. McCall's trial attorney asked him, "[w]hat effect . . . did the communications to . . . employees of Best of the West Productions and Huskemaw Optics, that you hired prostitutes have upon you?" Mr. McCall answered:

> Well, it's—it's hard. I have spent most of my life in community service. I was mayor before I did city council for three terms, president of the Texas Optometric Association, the American Optometric Association. And those are all elected positions, and your character is on the line every time that there's an election. And this is not about a city, it's about in some cases the state, in some cases the nation. People that I've known for decades. And most recently, that the governor of Texas, Greg Abbott, three years ago wanted me to go to University of Houston Board of Regents. That's one of

14

the top four appointments of the governor of Texas. University of Houston is a coveted one.

So he is not going to put anybody in a position like that could ever possibly come back and embarrass the governor's office. So doing a background check always come up, so when you look back over the—every position that I have explained to you, none were paid positions, not a single one of them. This is all in service. And so to be living my life like I have for the last 20, 25 years, this came out of left field. I have no idea where it came from, and I was not pleased.

[¶41] The jury heard testimony that after Mr. McCall's communication with Ms. Currier, not only did his relationship with her change, but his relationship throughout the entire LLCs' organization changed, as the defamatory remarks got spread around, and Mr. McCall "sensed the mood turning against" him because of the defamatory statements. It is possible and reasonable the jury inferred that part of the reason Mr. McCall's relationship with the LLCs soured and he was eventually expelled was the effect the defamatory statements had on the voting members. Furthermore, evidence showed that the LLCs paid Mr. McCall $50,000 a year, which he lost once he was expelled. And of course, once he was expelled, Mr. McCall lost business opportunities. Evidence of lost jobs or business opportunities may be some evidence of reputational damages. *Amell*, No. 14-24-00297-CV, 2025 WL 3275373, at *11 (citing *Innovative Block of S. Tex., Ltd. v. Valley Builders Supply, Inc*., 603 S.W.3d 409, 425 (Tex. 2020)).

[¶42] We are confident the evidence presented at trial sufficiently supports the jury's $75,000 damage award for Mr. McCall's defamation per se claim because defamation per se damages do not have to be a precise measure of damages. We find the award is not excessive nor does it shock the judicial conscience. We find no irresistible inference that passion, prejudice, or other improper cause had invaded the jury. Therefore, the district court abused its discretion when it reduced the jury's defamation per se damage award to $500 under W.R.C.P. Rule 60(b). That order is reversed.

## CONCLUSION

[¶43] The district court abused its discretion when it used Rule 60(b) to reduce both the jury's damage award for Mr. McCall's conversion claim and the jury's damage award for Mr. McCall's defamation per se claim. Both of those rulings are reversed, and the two damage award amounts are reinstated.

15